## WINDHAM COUNTY,

### FEBRUARY TERM, 1836.

PRESENT, HON. CHARLES K. WILLIAMS, *Chief Justice.*
       "    STEPHEN ROYCE,
       "    JACOB COLLAMER,     } *Assistant Justices.*
       "    ISAAC F. REDFIELD,

WINDHAM,
*February,*
1836.

## JOHN C. BRIGGS *vs.* GUILFORD.

Towns are bound to repair injuries to roads and bridges as soon as may be, but this term is to have a reasonable and practicable construction, and the repair is to be made as soon as the magnitude of the work, the opportunity of procuring materials, and other circumstances necessarily connected with such a work will admit.

*Quere.*—Are towns bound to open, when practicable, any by-way around a bridge, while repairing ?

If such by-way be voluntarily opened by the town, they are bound only to make the same as safe and good as the temporary purpose for which it is made would reasonably require.

Injuries in any measure owing to the plaintiff's want of ordinary care, are not the foundation of an action.

This was an action on the case for special damage to the plaintiff from the insufficiency of a certain public highway and bridge in Guilford. *Plea,* general issue, and trial by jury.

The plaintiff introduced testimony tending to show that he was travelling with a horse and chaise on the stage-road through Guilford, on the 24th of June, 1834. When he arrived at Broad Brook in said town, he found the bridge across said brook gone, which bridge it was admitted Guilford was bound to maintain ; that therefore he turned into a way on the adjoining land leading down the bank and across said stream around said bridge—that this way was opened by the owner of the land, on the occasion and under the circumstances hereinafter mentioned—that the same, immediately after leaving the highway, necessarily descended a steep bank into a level plain—that the way down this bank was about nine rods long, and of an elevation of from 12 to 14 degrees.—It was a dug-

WINDHAM,
February,
1836.
Briggs
vs.
Guilford.

way into a side-hill, and the only guard on the lower side consisted of logs and timbers from 12 to 15 inches diameter, placed and secured by stakes on the lower side of said road.—The down-hill end of each timber was laid upon the upper end of the timber below, and so continued the whole length of said hill, with some sticks or stones laid occasionally under said timbers.  In descending this hill with his chaise, both the horse and chaise of the defendant went off over said muniment, and were precipitated down into the plain, 12 or 14 feet, and the chaise thereby much broken and damaged.——The plaintiff introduced testimony further tending to show that the dug-way might have been made longer, and the elevation thereby reduced, at a few dollars' expense; but on this point, the testimony was contradictory.

The defendant introduced testimony tending to show, that on the 25th day of May, 1834, an unusual and extraordinary freshet took place on this stream, occasioned by a sudden and violent rain. On the next day in the morning, being Monday, the selectmen of Guilford were out: one of them, on the way, came to this bridge, and finding the same gone, applied to a Mr. Gale, the owner of the adjoining land, to open his fences and proceed to arrange this by-way in such manner as that people might get along while the bridge was rebuilding: This had been done, whenever the bridge was repairing, for forty years past.—That thereupon Gale opened his fences, and men and teams were procured, and this dug-way was completed and used.—That said selectman then, after leaving said request with Gale, proceeded to meet the other selectmen, who proceeded to examine the damages occasioned by the freshet. They found the damage extensive: nine bridges across said stream were carried off in that town—the highways greatly injured, and in one place 60 or 70 rods of road entirely gone.—They there laid out a new highway—put some of the minor bridges in immediate contract, and got some people at work, and near night returned to the bridge in question, and endeavored to contract for the same, but did not succeed.  They inserted in the next Brattleboro' paper, which was published on Saturday, that all the bridges not previously let by private contract, would be let at public vendue on Wednesday of the next week; and on Wednesday, June 5th, this bridge, with all the others not previously contracted, were let out to be erected.  This bridge had never before been carried away by freshet; but now, though the same had been rebuilt but two years before, one of its stone abutments was swept off, and the soil near six feet below.  Gale, who contracted to rebuild said abutment at

34

WINDHAM,
February,
1836.

Briggs
vs.
Guilford.

$186, commenced drawing the stone the next day after he took the contract; and as soon as the water had subsided sufficiently, he employed hands and kept three or four men constantly laying the stone, which was as great a number as could be conveniently so at work; and he drew the stone from thirty rods to a mile, and kept the stone-layers constantly supplied until the abutment, which was twenty-one feet high and contained forty cords of stone, was completed, which was on the 3d day of July; and the wood-woik, being prepared, was immediately put on, and the bridge rendered passable on the 4th day of July.—The whole expense of this bridge being about four hundred dollars, and the whole damage to the roads and bridges in that town, near three thousand dollars.

The defendant also introduced testimony tending to show, that the plaintiff was informed of the condition of this road and bridge before he arrived there, and conducted with imprudence in his mode of descending said hill.

The plaintiff requested the court to charge the jury, that if the bridge was carried away by a freshet, the town were by law required to rebuild the same as soon as might be.—That if they delayed for the mere purpose of consulting their own convenience or profit, they were negligent and liable for damage occasioned by want of the bridge.—That if they used all proper diligence in building the bridge, but in the mean time made a road across the stream elsewhere for the public travel, and used it themselves, such road was a highway within the statute; and they were bound, while it was kept open, to see that it was sufficiently safe.—That if they allowed it to be of greater elevation than was necessary, or in case the elevation could not be avoided—did not provide a sufficient railing to prevent accident, they were liable.—That if the injury happened in some measure by the conduct or management of the horse, when it could not be rationally expected to have happened, if the road had been properly made and guarded, the town were liable.

But the court declined so to charge the jury, but did charge them as follows:—It is the duty of towns to make and keep their highways and bridges in good and sufficient repair—safe for the traveller—using ordinary care and prudence; and if special damage arise from insufficiency or want of repair, the town is liable. It seems that the bridge was providentially destroyed on the 25th day of May. This bridge, it was the duty of the town immediately to rebuild with as much dispatch as the magnitude of the work, under the existing circumstances, would reasonably permit. The

WINDHAM,
February,
1836.

Briggs,
vs.
Guilford.

town was not bound to rebuild it with a dispatch which was entirely inconsistent with, or utterly regardless of economy and their own interests; nor were they to consult their own convenience only ; but were bound to rebuild it immediately—using all that diligence which the importance of the road, the magnitude of the work, the difficulty of procuring materials and other circumstances necessarily connected with such a work would reasonably permit. If the town were guilty of neglect in the performance of this duty, and thereby the plaintiff was compelled to seek his way around the bridge, and in so doing, using ordinary prudence, he was injured, the plaintiff is entitled to recover.

It may perhaps be questionable, whether, if the town use immediate and reasonable diligence in the repair of sudden and providential injuries to roads and bridges, they are bound to make any temporary by-ways to be used in the mean time, or thereby to assume new and additional duties or liabilities by such act of gratuity.

This town did, however, open and repair a by-way around this bridge, on which by-way this injury happened. In inquiring whether this way was sufficient, or out of repair, the jury will consider the occasion for which that way was opened—the length of time and nature of travel for which it was expected to be used. If the way was as sufficient and in as good repair as was reasonably demanded for such purpose and occasion, then the town are not liable. But if that way was not even sufficient for the occasion for which it was made and used, the jury will inquire whether from such insufficiency the plaintiff has been injured. If the injury is in whole or in part owing to the plaintiff's want of using ordinary care or prudence, then he is not entitled to recover : but if this way is found insufficient and out of repair, as before explained, and the damage accrued to the plaintiff thereby, then the town is liable to pay the same.

The jury returned a verdict for the defendant, and the plaintiff filed exceptions, whereon the case passed to this court.

*William C. Bradley for the plaintiff.*—There being no question made in the case as to the general liability of the town to repair the bridge, and in the mean time the road, the questions raised relate to the *extent* of the liability in regard to each.

1. *As to the Bridge*—The plaintiff contends that the obligation was to repair immediately if practicable, and that if the town delayed in so doing, it was at their own risk ; and for damages happening during that delay, by reason of the insufficiency of the bridge,

WINDHAM,
*February*,
1836.

Briggs
*vs.*
Guilford.

the town was liable.—That the practicability of rebuilding the bridge was settled by the ultimate repair, which in that respect made it a question of time only.—That the town having delayed providing in the actual repair for the space of at least 11 days, it was of itself such negligence as made them liable, especially if the public travel was suspended, or during that time turned down a declivity.—That this delay was not excused by waiting to advertise for building-jobs in a newspaper to be printed six days afterwards, because such jobbing was wholly unnecessary, and if permitted in such cases by law, not to be indulged to the extent of the delay.

2. · *As to the Road.*—The plaintiff contends that the town, being obliged to keep it in repair, it was (while the obligation existed) placed on the footing of all other legal roads, viz., sufficiently safe for all the travel which usually passed on the stage-road thro' the town.—That from 12 to 14 degrees of declivity was of itself unsafe ; and only to be excused by the impracticability of making it lower, and single timbers of 12 to 15 inches diameter each, with one extremity on the ground and the other on the timber below throughout the declivity, was not a sufficient safeguard on the lower side ; and that after the request to the court, the attention of the jury ought to have been called to both these circumstances.

3. *As to both Bridge and Road,*—That if the injury happened under such circumstances that there was good ground to find that it would not (without wilfulness on the part of the plaintiff) have happened if the road had been in repair, the plaintiff was entitled to recover.

*John Phelps for the defendant.*—The question in this case arises upon the charge to the jury. Of this we think the plaintiff has no right to complain. The charge restricted the jury to find, if they found for the defendant, 1st, That the town proceeded to rebuild with all proper and reasonable dispatch, governed only by an economy not inconsistent with, or utterly regardless of their own interests.—2d, That the temporary way was as sufficient as was reasonably demanded for the occasion. Or if they found otherwise upon either of these points, they must find, 3d, That the injury was in whole or in part owing to the plaintiff's want of using ordinary care and prudence.

Any thing short of the doctrine laid down on the first point, would compel the town to erect a bridge of unsuitable materials, and of too frail a structure.—Any thing short of that on the second, might, and in the very instance in question would, have been an

impossibility. For how are the rocky and precipitous banks of our rivers to be safely passed without bridges? But while a bridge is in building, a temporary way is all that can be had : and the character of this must be regulated entirely by the character of the precipice to be surmounted, and not at all by the common standard for ordinary highways; and of this every traveller is bound to take notice, and govern himself accordingly, at his peril. The charge then was correct on both points, and there was sufficient evidence given to warrant the jury in finding according to the charge. But if there was not, they then found, agreeably with the charge, that the party injured was himself in fault.

It must be borne in mind, that the way in question was through a private enclosed domain.—That it must be made under license of, and when the owner chose to direct, if made at all; or else by such outlet used for the occasion, time out of mind, if there be one.— Com. Dig. Tit. Highway, 1 Rol. Ab. 390.—That the town had no way to compel the owner to give a license, either to have his soil dug down, or the way extended contrary to his pleasure.— That the traveller on such an emergency must be content with such accommodation as the owner chooses to give, or, or go back and take some other more safe road round the obstruction, at his election. If he chooses to encounter the obstruction, he must know the discipline and ability of his beast at his peril ; and is bound to direct and govern both his beast and himself—not with imprudence, certainly; but with all the ordinary care, skill and prudence of a careful and prudent man. And the measure of care and prudence in such case is not to be governed by that which would be necessary and proper upon an open, unobstructed, finished highway ; but by that which would be required in getting over, or around an obstruction upon a road or bridge then actually under the process of repair. Upon an open road left as finished, it might be deemed prudent management and ordinary care not to hold up a horse under full trot; or even on a proper occasion, greater speed. But when a bridge is swept away, and a large gulf opened, and workmen all about employed in rebuilding, and the traveller otherwise specially notified of the perils of the occasion, he must not persist to continue his unbroken speed, nor to ride over the dangerous gulf, if to ride would increase the hazard; nor to direct his restive beast with his own imprudent or unskilful hand ; nor refuse aid when tendered to him.

Such, among other facts, were given in evidence ; and we may suppose even stronger ones, when the plaintiff, in drawing up his

WINDHAM, *February.* 1836.

Briggs
vs.
Guilford.

WINDHAM,
February,
1836.
───────
Briggs
vs.
Guilford.

case, states, *that he conducted with imprudence in his mode of descending the hill.* Can it be said then, in this case, *that the party injured is in no fault?* But the jury peradventure found that he was. The court charged, if the evidence would warrant it, they might so find ; and that such would be a defence to the action.—And so is the settled doctrine of the law.—1 Vt. R. 357—4 Mass. R. 423.

The opinion of the court was delivered by

COLLAMER, J.—The first complaint relates to the charge of the court as to the delay in repairing the bridge. How soon a town shall rebuild a bridge, is certainly not an abstract principle of law. The statute indeed provides that it shall be done *as soon as may be.* But *how soon* it may be done, obviously depends on a great variety of circumstances ; and to these considerations, the attention of the jury was properly directed by the court, and with the terms of the charge this court are satisfied.

The next complaint relates to this by-way, and the duty of the town in relation thereto. This court are not so happy as to be unanimous in opinion on the duty devolving upon towns as to opening temporary roads on such occasions ; nor do we find it necessary to lay down now any rule on that subject. It is the plaintiff who now complains. If by law the town was under no obligation to open this temporary way, for convenience, perhaps the selectmen doing it was an act of supererogation, extra official, and created no liability in the town in relation thereto ; and in such case, the plaintiff has no occasion to complain of the charge which was given. But assuming that the town were bound to open this way, or that they, by their selectmen, assumed this, voluntarily, still this court is satisfied with the measure of duty laid down by the court in their charge, and we see in it no error. That part of the charge which required of the plaintiff the exercise of *ordinary care,* and excluding him from the recovery of damages for any injury to which his *neglect* of ordinary care contributed, is in pursuance of the case *Noyes* vs. *Morristown,* with which the court are satisfied. Indeed in such case, how could it be said the injury was occasioned by the want of repair in the road ?

Judgment affirmed,