THE HIGHWAY COMMISSIONERS OF THE TOWN OF

RUTLAND

*v.*

THE HIGHWAY COMMISSIONERS OF THE TOWN OF

DAYTON.

1. HIGHWAY COMMISSIONERS—*their official character.* They are a *quasi* corporation. Suits by, or against them, should be brought in their official, not individual names.

2. TOWNS—*joint liability.* In order to enable a town to compel an adjoining town to contribute to the making or maintaining a bridge over a stream dividing them, under section 18, article 16 of the township organization law, a legal liability to such contribution must be shown.

3. LIABILITY—*how shown.* This may be, by the record of official acts; by acts of possession and control; by the recognition and use of the easement, or in any manner evincing a complete understanding to that effect. The mere use of a bridge or easement, opened by private enterprise or general subscription by the public, creates no liability.

4. *But,* it seems that if a bridge, built by private means and dedicated to public use, is not indicted as a public nuisance, but, on the contrary, if it be used so much and so long by the public as to evince its usefulness to them, it should not continue to be a burthen to those who built it, and may become a public charge. In such case, facts which do not, of themselves, afford a legal estoppel, or conclusion that there is an acceptance, may be treated as affording proof of acceptance.

5. APPROPRIATION—*effect of protest.* When the people of a township petition for, and the highway commissioners recommend, a tax to repair such bridge, but protest against being further liable, and the county supervisors levy a tax and appropriate money for the purpose prayed for, the

act, coupled with the want of authority to repair other than public high-ways, would seem to be a recognition, notwithstanding the protest.

6.  INSTRUCTIONS.  It is error to instruct the jury that certain facts con-stitute acceptance, facts being proper for the consideration of the jury.

7.  MEASURE OF DAMAGES.  Liability being established, the town which made the repairs, and paid or became responsible for the cost, can not recover more than is shown to be one-half of the sum reasonably and judiciously expended.

8.  IMMATERIAL ISSUE.  It can not be pleaded in such a case, that the bridge is unlawful by reason of a law declaring the river a navigable stream.

APPEAL from the County Court of LaSalle county ; the Hon. CHARLES H. GILMAN, Judge, presiding.

Messrs. BUSHNELL & BULL, and Mr. G. S. ELDRIDGE, for the appellants.

Messrs. DICKEY, BOYLE & RICHOLSON, Mr. J. B. RICE, and Mr. D. S. SNOW, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action on the case, brought by appellees in the county court of LaSalle county, against appellants. It appears that the towns of Dayton and Rutland are organized under the township law, and are adjoining ; that they are divided by Fox river ; that a highway, leading in a northerly direction through these towns, crosses the river at the village of Dayton ; that, in 1853, a bridge was built across the river at that point, which became a part of the highway, and was used for public travel by the people generally. It is claimed by appellees that the bridge became a public bridge which both townships were bound to keep in repair, and having become dangerous to travel and needing repair, appellees notified appellants that the bridge was unsafe, and requested them to unite with them in repairing it ; and again gave them written notice to repair within twenty days, or appellees would do so and look to appellants for one-half of the cost.

Appellants denied that the bridge was built as a town bridge, or ever became such, and that it was built by private enterprise, and that the town of Rutland was in nowise required to aid in repairing the same, and refused to contribute for the purpose. Thereupon, the commissioners of highways of the town of Dayton proceeded to and repaired the bridge, and brought this suit to recover contribution from the town of Rutland for half of the expenditure. On a trial in the court below, the jury rendered a verdict in favor of appellees for the sum of $1317.36, upon which judgment was rendered, and from which this appeal is prosecuted, and a reversal is asked.

Appellants assign as error, that the court below admitted improper evidence; rejected proper evidence; the court gave improper instructions on behalf of appellees; refused proper instructions asked by appellants; in overruling the motion for a new trial and in arrest, and that the verdict and judgment are against the law and evidence.

It is first argued that the suit was improperly brought; that it should have been brought in the individual names of the officers, as commissioners. By section 2 of article 12 of the township organization law, it is provided that, in all suits, the several towns shall sue and be sued by their names, except where town officers shall be authorized by law to sue in their name of office for the benefit of the town. Section 9 provides that, in suits by or against town officers in their name of office, costs shall be recovered as in like cases between individuals.

Section 18 of article 16 provides that, whenever any adjoining towns shall be liable to make or maintain any bridge or bridges over any stream dividing such towns, or on the line dividing such towns, such bridge or bridges shall be built and repaired at the equal expense of said towns, without reference to the town lines.

Section 20, of the same article, declares that, if the commissioners of highways of either of such towns, after reasonable notice in writing from the commissioners of highways of any other of such towns, shall neglect or refuse to rebuild or repair

any such bridge or bridges, it shall be lawful for the commissioners so giving notice, to make or repair the same, and then to maintain a suit *in their official capacity* against said *commissioners so neglecting or refusing to join in such making or repairing;* and in such suit the plaintiff shall be entitled to recover one-half of the expenses of such building or repairing, with costs of suit, and interest.

The 21st section provides, that any judgment recovered against commissioners of highways in their official character, shall be a charge on the town, and collected in the same manner as other town charges, except when the court shall certify that the neglect or refusal of the commissioners was wilful or malicious, in which case they shall be personally liable for such judgment, and the same may be enforced against them in the same manner as against individuals. These seem to be the only provisions relating to the question under consideration.

Had the general assembly intended that these officers should sue in their individual names, it seems to us that it would have been so declared in terms. But the provision is, that they shall sue in their official capacity; and to ascertain precisely what is meant by the phrase, is a question by no means easy.

In the case of *Manlove* v. *McHatton*, 4 Scam. 95, it was held that where a note was given to the individual who was school commissioner, for the use of the inhabitants, etc., his successor might sue in the name of "school commissioner of the county;" and that the name of the individual might be stricken out as surplusage. It is true, in that case, the statute authorized the suit to be brought in the name of "school commissioner of the county;" and when the statute requires a suit to be brought in the official capacity of highway commissioners, we can see no objection to dropping the individual names of these officers. They are called in the statute, and are generally known by the name of, highway commissioners; and it is conceded that they are a *quasi* corporation.

If they were to sue in their individual names as commissioners, and their term of office should expire pending the suit, it would abate, as they would no longer act in an official character, and hence could not further maintain the suit in that capacity. And it may be a serious question, whether the suit could be revived in the names of their successors; and if it could, then the same difficulty would present itself, in case their predecessors had acted wilfully or maliciously, in rendering judgment, so as to hold them liable, as the successors could not be made personally responsible for the malice or neglect of their predecessors. When they have so acted, there is no difficulty in making proof of who the commissioners were who had thus rendered themselves liable, and having it so appear in the judgment. To carry out that provision of the statute, such would have to be the practice, in case their term of office had expired before the judgment should be rendered, whether the suit should be brought in one or the other mode.

Again, it seems to have been the practice to bring such suits in the mode adopted in this case. See *Commissioners of Highways, etc.* v. *Harper*, 38 Ill. 103; *Commissioners of Highways, etc.* v. *The People*, 38 Ill. 347. It is true, that the question here presented was not raised in those cases, but it shows that the construction was given in both of those cases that the suit should be brought in the mode here adopted. The statute will certainly as well bear this as the other construction, and as we can foresee no inconvenience arising from it, we have no hesitation in adopting it. A judgment against persons not occupying the office of commissioners, would not bind the town. If against the successors of those who committed the wrong, they could urge that they did not omit the duty, nor could a judgment be rendered against them *in personam* for the neglect of duty by their predecessors. For these reasons we are of opinion that the suit was well brought.

The case of *Galway* v. *Stimson*, 4 Hill, 136, does not apply, as the statute of New York is essentially different from ours. Their statute declares no suit shall abate by the death of such

officer, but the court shall substitute the names of the successors in such office. Our statute contains no such provision. The statutes being unlike in their provisions, different constructions must be given.

The 18th section of the act of 1865, is relied upon to render appellants liable for half the expense incurred in repairing this bridge. The question arises, whether appellants were liable to repair before the labor was performed on the bridge, as this section does not impose such a duty unless it be where the town had erected, or joined in its erection, or had previously become, in some other mode, liable to perform such duties. By erecting the bridge, or by joining another town in its erection, by recognizing its erection or repair as a duty devolving on the town by resolution, or by the proper town authorities making necessary repairs, the liability of the town would be created or recognized.

It appears that this bridge was originally built by private enterprise, in which the public authorities did not participate. Subsequently, the bridge being free to public travel, the ford near the river was abandoned, and the travel thenceforth was over the bridge. In February, 1855, the commissioners of highways of Rutland township laid out and established a public highway, commencing at this bridge, running in an easterly direction through the town. The road was traveled by the public and worked by the highway commissioners. The first bridge erected where the present structure stands was carried away by high water and ice in 1857 ; and when the bridge was subsequently erected, the board of supervisors appropriated $500 for the purpose, and a tax of sixty cents on the one hundred dollars was imposed on the property in Rutland on the petition of citizens and recommendation of the board of commissioners of that town, but there was a protest in the petition and recommendation against the town becoming liable for its future maintenance. Subsequently, the highway commissioners nailed boards across the end of the bridge in their town to prevent persons from passing over it and receiving injury on account of its unsafe condition.

We are clearly of the opinion, that the persons who erected the bridge intended to dedicate it to public use ; and as equally clear that the officers of the town of Dayton regarded their town as liable to repair. The fact that they proceeded to make the contract for rebuilding the bridge, is evidence of that fact. On both of these propositions the evidence is clear and satisfactory, and they require no discussion. .

But it is urged that the town of Rutland is not liable, as the officers of the town have never accepted the dedication, or done any act either recognizing or creating such a liability.

At the common law, slight circumstances have been held to warrant the inference of an acceptance of such a dedication. In the case of *The King* v. *The Inhabitants of West Riding*, 2 East R. 342, Lord ELLENBOROUGH, in delivering the opinion of the court, said that, at the common law, counties are chargeable with the repair of bridges unless it be shown, under the statute of the 22 Hen. 8, C. 5, that some persons, lands, tenements, or bodies politic, are chargeable with their repair. And it was held that, whilst public travel over a bridge did not necessarily fix the liability of the county for such repairs, it was sufficient to require the county to show that some other person was bound to repair ; that the fact that it was adopted by the public travel over it, was evidence that it was not a nuisance ; that no person could impose an unsafe bridge upon the public, and it may be treated as a nuisance and indicted as such. And it is held, that if the public lie by, without objection, and make use of it for some time, it is evidence that they adopt the act ; and the bridge becoming of public benefit, the burden of repair ought properly to fall upon the public. Lord COKE is referred to, where he says, in 2 Inst. 700 : "If a man make a bridge for the good of all. the subjects, he is not bound to repair it ; for. no particular man is bound to reparation of bridges by the common law, but *ratione tenuræ* or *prescriptionis.*" He also says : "But admit that none at all were bounden to the reparation of the bridge, by whom should it be repaired, by the common law ? The answer is, by the

whole county, etc., wherein the bridge is, etc.; because it is for the common good and ease of the whole county." Lord ELLENBOROUGH says: "Now, that this bridge is for the common good, is proved by the use of it by all of the King's subjects passing that way, by its not having been treated as a nuisance, but acquiesced in. Then, after having enjoyed the benefit of it, shall the public object to it when they begin to feel the burden of repair?"

The case of *Rex* v. *West Riding, etc.*, 5 Burrow, 2594, announces the same rule. This last case is, in very many of its features, similar to the one under consideration. The rule announced by Mr. Justice Aston, in that case, is still broader. It is, "That if a man build a bridge, and it become useful to the county in general, the county shall repair it." The case of *The State* v. *The Town of Crampton*, 2 N. H. 513, announces the doctrine that, though a bridge be erected, not by the public, it may still become a public charge in respect to repair. It is there said the true test is, that if the bridge is dedicated to the public, if used by the public and found to be of general utility, it should not continue a burthen to the individuals who built it. It is also said, though the use and repairs of it by the public may have been under a protest against their liability, and for a shorter period than twenty years, liability is nevertheless fixed if the bridge was not indicted as a nuisance, and it be used so much and so long by the public as to evince its usefulness to them.

Then, it only remained to show, that the town of Rutland accepted the dedication. This court has repeatedly held, that to render a dedication complete, the owner must intend to appropriate the easement in the land to the public, to be permanently appropriated to the particular use intended; and the public must accept it for the use intended by the donor. An acceptance may be manifested in a variety of modes. The most usual and satisfactory evidence of the fact is, by its appropriation to the specific use by the public officers having control of the easement. Where a road is dedicated, its acceptance

is inferred by the acts of those having the care of public highways, by recognizing and controlling it in the same manner as they do other highways ; by repairing it when required ; by having obstructions removed when needed, together with various other acts, which indicate a recognition that it is exclusively for public use. That they so regard it, may also be inferred from their declarations ; by placing it on a map of the roads of the town, or any act which manifests a design by them to treat it as one of the highways of the town. And we have seen, from the authorities above quoted, that at the common law, the mere fact that a bridge was traveled by the public such a length of time as to create the presumption that it was of public benefit, caused it to become a public charge, unless the burthen was shown to be on others ; and that the public authorities might have it indicted as a nuisance, if not of public utility.

In this case there are, in addition to the fact that the bridge was continuously traveled by the public without let or hindrance, which we do not hold, of itself, as affording a legal estoppel or conclusion that there was an acceptance, but simply as a fact tending to prove an acceptance, other circumstances tending to prove that fact. The bridge was not placed on the highway, but some distance from it, and yet the road was obstructed leading to the ford of the river, and travel turned over the bridge, and the record fails to disclose any evidence that those having charge of the roads, and whose duty it was to repair them and remove such obstructions, ever had, or attempted to have, them removed. On the contrary, they seem to have acquiesced in the obstruction of travel by way of the ford for the whole period, from the rebuilding of the bridge in 1857 until it was again rebuilt, and out of which this controversy arises.

Again, the road commissioners of Rutland established and opened a road from the east end of the bridge, running easterly through the town. They thus led public travel to the end of this bridge that it might travel over it, instead of the

ford of the river, where the public highway previously ran; and if the way leading to the bridge was private, and the bridge was private, they terminated a public highway in a private way and at a private bridge, when their duty required them to terminate the road at a point where the travel would have the right to pass therefrom in some other direction than by that over which they traveled to its terminus. But even if the private way leading to the bridge became a public road by locating a road to the end of the bridge, still, the bridge itself was private unless previously accepted, or was then accepted, by the commissioners, in locating the road.

Again, one of the highway commissioners of Rutland township boarded up the east end of the bridge so as to prevent travel from passing over it, as he says, to prevent litigation, in which an accident might involve his town.

When the bridge was carried away by the flood and ice, a large number of the citizens of the town of Rutland petitioned that a tax, sufficient to yield about $1000, should be levied on the taxable property of their town to aid in rebuilding the bridge. And they must have known that such a tax could not have been legally levied to aid in the construction of a private bridge. And the highway commissioners of Rutland township recommended the board of supervisors to levy a tax of sixty cents on the one hundred dollars' worth of taxable property in their town, to be used in reconstructing the bridge. And they must have known they could only legally recommend the levy of such a tax to build or repair a public bridge, which their town was either in whole or in part liable to repair.

It is true, that the petition of the citizens and the recommendation of the highway commissioners were coupled with a statement that these several acts were not to be held to render the town liable to future repairs. If these commissioners, or their predecessors, had recognized this bridge as a public highway, and thus accepted it as such, then such a protest could not have any effect one way or the other; or, if by

68    TOWN OF RUTLAND *v.* TOWN OF DAYTON. [Sept. T.,

Opinion of the Court.

recommending the levy of the tax, they intended to recognize the bridge as a town charge, the protest could not prevent the liability of the town. Nor would it have any effect on acts of recognition, if any were shown, by their successors. When officers perform official duties, the law attaches the legal effect to be given to such acts, and no protest of the officer can change the result flowing from the act.

These were all acts tending to prove an acceptance of the bridge, to be considered by the jury. And it was for them to say whether they all, together, or any one or more of them, proved an acceptance of the dedication. If there was an intention on the part of the highway commissioners to accept, and that was manifested either by declarations or acts, then Rutland township is liable to contribute to the expense of the rebuilding of this bridge.

It is objected that the court erred in admitting the plat of the State road, crossing Fox river at the place where the bridge was erected, in evidence. We do not perceive how the admission of this plat could, in the slightest degree, affect the rights of appellants. It was not questioned that a State road ran near to the bridge, and the plat may have been of use to the jury in learning the relative position of the ford and the bridge. As we can see no injury resulting, or likely to result from its admission, we can not reverse for that reason, even if it was improperly received as evidence.

It is also urged that the resolution of the board of supervisors, making an appropriation for the rebuilding the bridge, was improperly admitted in evidence. It is an elementary rule, that if evidence is admissible for any purpose, it should not be rejected. In this case, it was material for the jury to know who constructed the bridge erected in 1857, and from what source the funds were obtained. On the part of appellants, it was contended that the bridge was a private enterprise, whilst appellees contended that it was a public bridge, constructed and recognized as such. To show that it was so regarded by the board of supervisors representing the whole

county, the resolution was properly admitted. There was no error in the admission of this evidence.

It is again urged, that the court below erred in rejecting the evidence offered to prove that the bridge was not of public utility; that there were other bridges which accommodated the public in going to and returning from their places of business, and that the bridge accommodated private individuals. The question was, whether the proper officers had recognized the liability of the town; whether they had accepted the bridge as a dedication, and not whether it would be to the advantage of the town to do so, and appropriate the bridge to public use. This being the question, it did not matter whether it would be judicious to adopt it if the officers had not already accepted it. The evidence was properly rejected.

It is next urged, that the court below erred in giving instructions for appellees. It is claimed that their first instruction is too general. It is technically incorrect, as it does not confine the liability of the town to repair, to public bridges. And as a town is only charged with the repair of such, this instruction should have so informed the jury. The very question lying at the foundation of the right to recover was, whether it was a public bridge. Until that was established, there could be no liability.

The third of appellees' instructions was erroneous. It informs the jury that, if the highway commissioners in Rutland laid out and opened a public road to the end of the bridge, that fact would render the town liable for repairs. As this was originally a bridge built by individuals, the question should have been left to the jury whether they had donated it to the public, and the public had accepted it. The opening of a public road to the end of the bridge did not, as a legal conclusion, render the town liable for repairs. That was a circumstance tending to show an acceptance of the dedication. The fourth of appellees' instructions is liable to the same objection. The fifth instruction erroneously asserts that, although this bridge was built by private individuals, still, if the town

70 TOWN OF RUTLAND *v.* TOWN OF DAYTON. [Sept. T.,

Opinion of the Court.

authorities permitted the public to travel over the bridge, and repaired the roads leading to the bridge, the towns thereby became liable for its repair. We are at a loss to perceive how the town officers could prevent the public from traveling over the bridge. If private property, they could not close the bridge without becoming trespassers. And the law imposed the duty of repairing all public roads in their towns. If this instruction is correct, then the commissioners had no option whether they would or not accept the dedication, but had the liability thrust upon them without their consent, and they were deprived of the right to determine whether the bridge was of such public necessity as to require its adoption as a public highway, for the repair of which the town should be liable. These facts, as we have seen, were for the consideration of the jury in finding on the question of an acceptance by the town officers, but they did not form legal conclusions or estoppels.

The instructions were not sufficiently limited as to the measure of damages. If Rutland is liable, it is only for one half of the cost of repair reasonably expended. Dayton could have no right to wastefully or recklessly expend money, and impose half of the burthen upon Rutland. Appellees had no right to recover half of the appropriation made by the county, but may participate in any donation made to towns to aid in repairing the bridge. But if any donation was made to the town of Dayton to relieve that town from a portion of the expense of constructing the bridge, then Rutland would not have a right to participate in such donation. The instructions were not sufficiently specific on this question.

It is next urged, that the court erred in refusing instructions asked by appellants. Whilst a portion of them assert correct principles as to a dedication and acceptance of the bridge, they use the word transfer instead of dedication. The term might be regarded by the jury as requiring a written transfer. In fact, the language rather implies a conveyance than a parol gift, and with that construction they would be

erroneous, as such a dedication may be effectually made by parol, or mere acts of acquiescence, and the like. With this correction, no objection is perceived to the third and fourth of appellants' instructions.

The sixth of appellants' instructions was unobjectionable, as the mere fact that the town had repaired its public roads, including that leading to the bridge, could not, as a legal proposition, create a liability to repair, but the court might well refuse to give it, inasmuch as there were other circumstances in connection with that from which an acceptance might be inferred, and consequently liability to repair. An instruction can not be said to be entirely fair which simply selects one of several facts tending to defeat liability, unless it concludes the case, and base an instruction on it alone, but it should be more general and comprehensive in its scope.

The seventh is not explicit as to the dedication, but required that the bridge should have been turned over to the town authorities. From this, the jury would probably infer that a formal surrender should have been made, when such is not the case. Merely permitting the public to use the bridge, without objection, for a length of time, may, if the surrounding circumstances justify it, amount to a complete dedication, without any formal donation, or formal offer to give it to the public. This, then, rendered this instruction vicious, and it was properly refused. The same objection applies to the eighth.

The tenth instruction asked by appellants was properly refused. It assumed, as a matter of law, that the petition and recommendation that a tax be levied to rebuild the bridge after its destruction in 1857, coupled with a statement that the town should not be liable for future repairs, did not render the town liable. That was a question for the jury. If the officers regarded the bridge a town charge, and recommended the levy of the tax because they so regarded it, and not as a mere gratuity to private individuals, then it was a recognition which, if not previously accepted, rendered the town liable.

Their intention in performing the act would govern. It was for the jury to find whether the condition was based on some promise that the town should not be required to repair, or other consideration.

The eleventh instruction is not correct in the last clause, which asserts that appellees are entitled to recover no more than one-half of the amount for which a competent and responsible bridge builder offered to construct it at the time. This refers to none of the circumstances surrounding the transaction. The plan of the work, the time when payments could be made, and the material used, would all contribute to make a material difference in the contract price. If the town of Dayton only had half of the money on hand, and the time when the balance should be paid depended upon when the other half could be obtained from Rutland, then all must see that the contractor would, of necessity, increase the price. Had the instruction been given, the jury could not have considered any of these circumstances, if they existed and appeared from the evidence. This instruction does not confine the proposition to the work as it was done, and the character of the payments to be made.

The twelfth of appellants' instructions was properly refused. The mere fact that the Greens, whether for the promotion of their own interest, the public good, or for other reasons, saw proper to indemnify the town of Dayton from payment of more than $1000, did not release the town of Rutland from liability, if it existed, for the payment of one-half of the cost of repairing the bridge. Nor is the thirteenth instruction correct. If the town of Dayton has paid, or become liable to pay, for the repairs, they have the right to recover one-half of the amount, if the sum is fair and reasonable.

It was also objected, that Fox river was, by an act of the legislature, declared to be a navigable stream, and this bridge is an obstruction, and is therefore unauthorized. Whether or not the charter, previously granted, authorized its construction, or whether or not its construction is in violation of the

right of the public to navigate the river, can not be raised collaterally in this proceeding. If it obstructs navigation, and is violative·of the law declaring the stream navigable, it can be indicted and abated as a nuisance. When the question shall be thus directly presented, it will then be determined.

The judgment of the court below, for the errors indicated in this opinion, must be reversed, and the cause remanded.

*Judgment reversed.*