THE PEOPLE *ex rel.* Commissioners of Highways of the Towns of Ottawa and South Ottawa

*v.*

THE BOARD OF SUPERVISORS OF LA SALLE COUNTY.

*Filed at Ottawa November 17, 1884.*

1. BRIDGES—*compelling counties to aid in their construction—conditions to their liability.* Where a town has no power to levy and collect a tax to build a bridge within the limits of an incorporated city, the authorities of the town can not require the county to contribute toward the expense of such work.

2. SAME—*as to the power of towns to levy a tax to build a bridge within the limits of an incorporated city, village, etc.* The principle or rule to be deduced from the legislation in this State and the decisions of this court, as the law now stands, is, that a town has no power to levy and collect a tax for the building of a bridge within the limits of an incorporated town, village or city which has itself the power to establish, construct and repair bridges within its own limits. The powers and jurisdiction of the commissioners of highways in relation to bridges do not extend to any part of the territory of their towns embraced within any such incorporated town, village or city. The jurisdiction of the latter, on that subject, is exclusive.

This is an original application in this court on a petition for a writ of *mandamus*, filed by the commissioners of highways of the towns of Ottawa and South Ottawa, against the board of supervisors of La Salle county, to compel the county to contribute one-half of the expense of building a bridge over Fox river.

Mr. G. S. ELDRIDGE, and Messrs. GILBERT & ECKLES, for the relator.

Mr. L. W. BREWER, for the respondent.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

In the act in relation to township organization, approved February 17, 1851, (Laws 1851, p. 35,) it was provided by section 1, article 22: "The commissioners of highways in the several towns in this State shall have the care and super-intendence of highways and *bridges therein,* and it shall be their duty to give directions" (presumably to overseers of highways) "for the repairing of the roads and bridges in their respective towns, and to cause the highways, and the bridges which are or may be erected over streams intersecting high-ways, to be kept in repair." The city charter of Ottawa, enacted February 10, 1853, (Laws 1853, p. 300,) conferred upon that city power "to open, alter, abolish, widen, extend, establish, grade, pave or otherwise improve and repair streets * * * and other public highways," and "to establish, erect and keep in repair bridges" within its limits, and gave the city power to levy and collect certain taxes for that purpose. These statutes both being in force, the town of Ottawa levied a tax, by vote in the town meeting, to raise funds to con-struct a bridge across Fox river at a point within the limits of the city of Ottawa. The lawful authority to collect this tax was called in question on a bill for injunction brought by a tax-payer of the town, resident within the city, in which it was charged that the city had exclusive control of bridges within its limits, and that the city had not provided for or consented to the erection of a bridge at that point. The cause was finally determined in this court. It was there held that the town had no lawful power to levy or collect a tax for that purpose, upon the ground that the jurisdiction of the city was *exclusive.* (*Town of Ottawa* v. *Walker,* 21 Ill.

605.)   The views of the court are stated fully on page 609 of the Reports, and need not be repeated here.   The same principle was again promulgated in *Commissioners of Highways of the Town of Lancaster* v. *Baumgarten*, 41 Ill. 260, and what was said in the *Ottawa-Walker case* (in the year 1859) was there (in 1866) referred to and reaffirmed.

The principle or rule established in these cases is, that under the statutes, as they then stood, the powers and jurisdiction of the commissioners of highways in relation to bridges did not extend to any part of the territory of their town embraced within the limits of incorporated towns, villages or cities having powers to establish, construct and repair bridges within their respective limits.   In the *Ottawa-Walker case* the territorial limits of their authority was held not to cover ground within the limits of the city, although embraced also within the limits of the town.   In the *Lancaster-Baumgarten case* the territorial limits of their liability to build bridges were held not to extend beyond the boundary of their town, nor into the limits of a city not within the boundaries of their town, and this upon the ground that the whole burden of making and repairing bridges was, by its charter, upon the city of Freeport.   Thus the law in this regard confessedly stood until 1879.   True, there was a statute saying that where an adjoining town *was liable* to construct a bridge over a stream which was the town line, such bridge should be built at the equal expense of the respective towns.   (Laws 1861, p. 279.)   This was held not to apply to the *Freeport case*, for want of the "liability" (mentioned in the act) on the part of the town of Lancaster.

It is contended that the policy of confining the powers of the commissioners of highways within the territorial limits of that part of the territory of their town not embraced within the bounds of any incorporated city, town or village, which had prevailed up to 1879, was then abandoned, and that this is shown by the Road law of 1879, and by subsequent legisla-

34—111 ILL.

tion.   Reference is made to section 106 of the Road and Bridge act, (Laws 1879, p. 280,) where it is declared :   "Bridges over streams which divide towns,   *   *   *   and bridges over streams on roads on   *   *   *   town lines, *shall* be built and repaired at the equal expense of such towns :   Provided, that for the building and maintaining of bridges over streams *near*   *   *   *   town lines in which both are interested, the expense of building and maintaining any such bridges shall be borne *equally* by both *   *   *   towns."   The next section authorizes joint contracts to be entered into by the commissioners of adjoining towns for this purpose.   The next section provides that if the commissioners of either of such towns, after notice, shall neglect to build or repair any such bridge when any *contract has been* made in regard to the same, the commissioners giving the notice may build and repair the same, and recover one-half (or such amount as has been agreed upon) of the expense from the commissioners so neglecting to assist.

While the language of the statute law on this subject has been changed, it seems apparent, upon close observation, the law itself has not been changed at all in its substance and meaning.   While section 106 does expressly declare that bridges over streams which divide towns shall be built and repaired at the expense of such towns, still by the provisions of the succeeding sections it is apparent that no legal liability rests on any town under the act of 1879, except in cases where the town has chosen to assume such liability by contract.   And so, while the statute of 1883 contains the same express declaration that such bridges shall be a town charge, to be borne by both towns, still other sections show there to be no legal liability upon such towns unless assumed by such town.   There is a provision in the act of 1883 (Laws 1883, p. 130,) that where one of the adjoining towns refuses to assist, the other town may build at its own expense.

Now, as the law stood when the case of *Ottawa* v. *Walker* was decided, it was substantially the same in the respect of

making such bridges a charge upon the adjoining towns; as it is now. In *Rutland* v. *Dayton*, 60 Ill. 58, (decided in 1871,) it was laid down by this court that while no town was legally liable, aside from its own action, to build or assist in building or repairing a bridge across a stream dividing it from another town, still such a liability might be assumed by the consent of such town, and such consent might be shown by acts of the town,—such as laying out roads leading to the bridges, or raising money to pay, in part, for such repairs. The law is now, as it was then, that no town is legally liable, by mere force of the statute, to aid in the construction or repair of a bridge across a stream constituting a part of its boundary, but any town may voluntarily assume such liability by contract, express or implied.

We do not find any change in the Road law rendering the decision in the case of *Ottawa* v. *Walker* inapplicable to this case. The principle laid down in that case is, that the general words of the Road law giving road commissioners power over bridges within their respective towns, are not to be construed to apply to a bridge within the limits of an incorporated city,—that the statute as to powers of road commissioners is general, and that as to powers of cities is special, and that the special laws relating to cities are not to be affected by the general statute as to town officers. If this be so, the town of Ottawa having no power to collect a tax to build a bridge within a city, can not require the county to contribute one-half of the expense of such work.

The application for the writ of *mandamus* is therefore denied, and the petition dismissed.

*Mandamus denied.*