THE PEOPLE *ex rel.* Hamilton Corey

*v.*

COMRS. OF HIGHWAYS OF TOWNS OF DOVER AND OHIO.

*Filed at Ottawa October 11, 1895.*

1. BRIDGES—*repair of bridge is a public charge.* The repairing of a public bridge not chargeable to designated persons, lands, tenements or bodies politic, is, at common law, a public charge.

2. SAME—*proper municipal bodies must repair bridges.* Whenever the proper public authorities either construct a bridge upon the line of a public road or accept a bridge built there by others which is used by the public, the county, town or adjoining towns, represented by such authorities, must keep such bridge in repair.

3. SAME—*adjoining towns must repair bridge they construct on town line.* Adjoining towns which have built a bridge, by joint agreement, upon a public road over a stream between them, under the Road and Bridge law, (sec. 22,) are bound, by the combined effect of the common law and the statute, to keep such bridge in repair.

4. SAME—*towns jointly liable to repair are bound to rebuild when destroyed.* Towns jointly liable to repair a bridge built by them over a stream upon the town line between them, are bound to rebuild such bridge when, after becoming rotten and unsafe, it falls and is washed away by the stream.

5. SAME—*effect of town voluntarily assuming liability as to bridge.* Although no town is legally liable, without its assent, to aid in the construction or repair of bridges over streams on town-line roads or across a stream constituting part of its boundary, any town may voluntarily assume such liability by contract, express or implied.

6. MANDAMUS—*lies to compel adjoining towns to build bridge.* *Mandamus* will lie, under the statute, in a proper case, at the instance of a private person whose property is traveled over to reach a ford used because of the falling of a bridge on a road between two towns, to compel the commissioners of one of the towns jointly building it to join with those of the other in rebuilding the bridge, where the towns have sufficient funds applicable to the purpose. *People* v. *Comrs. of Highways,* 118 Ill. 239, distinguished.

7. SAME—*discretion as to kind of bridge does not defeat right to mandamus.* It is no objection to the granting of such *mandamus,* that the commissioners are invested with discretion as to the kind of bridge to be built, as such discretion, if abused or made to work injustice, may be controlled by *mandamus.*

*People ex rel.* v. *Town of Dover,* 53 Ill. App. 442, reversed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Bureau county; the Hon. CHARLES BLANCHARD, Judge, presiding.

SCOTT & DAVIS, for appellant:

The 21st section of the Road and Bridge law provides that bridges over streams on town-line roads shall be built and kept in repair at the joint expense of the towns. This language is mandatory, the performance of which may be compelled by *mandamus.* Dillon on Mun. Corp. sec. 673; *County of St. Clair* v. *People ex rel.* 85 Ill. 401; *Hammar* v. *Covington,* 3 Metc. 494; *Uniontown* v. *Commonwealth,* 34 Pa. St. 293; *Ottawa* v. *People ex rel.* 48 Ill. 233; *Brokaw* v. *Comrs. of Highways,* 130 id. 488; *People ex rel.* v. *Bloomington,* 63 id. 207.

*Mandamus* will lie to compel commissioners to erect a bridge, where the language is specific, and points out their duty, and is mandatory. *Commonwealth* v. *Sheehan,* 81 Pa. St. 132; *Commonwealth* v. *Loomis,* 128 id. 174; *Pumphrey* v. *Baltimore,* 47 Md. 145; *Patterson* v. *Vail,* 43 Iowa, 142; Merrill on Mandamus, sec. 116.

*Mandamus* will lie to compel county boards to contribute one-half of the expense of a bridge, where the town has complied with the law. *Logan County* v. *People ex rel.* 116 Ill. 466.

*Mandamus* will lie to compel commissioners of highways to build a new structure, where a former one has been destroyed. *Howe* v. *Crawford County,* 47 Pa. St. 361; *State* v. *Gibson County,* 80 Ind. 478; Merrill on Mandamus, sec. 116.

A public bridge is owned by adjoining towns where the same is erected with joint funds, and the towns are bound jointly to keep it in repair, and such duty will be enforced by *mandamus.* *State* v. *Wood County,* 41 Wis. 28; Merrill on Mandamus, sec. 116.

A refusal to act would be an abuse of their discretion, and *mandamus* will lie to make them exercise such discretion. *Brokaw* v. *Comrs. of Highways,* 130 Ill. 488; *Village of Glencoe* v. *People,* 78 id. 382; Tapping on Mandamus, (Am. ed.) 66.

The road is obstructed and the public prevented from using it as a highway, and the court should compel the commissioners of Ohio and Dover to rebuild the bridge, or show good cause, by answer to the petition, for their refusal. *Brokaw* v. *Comrs. of Highways,* 130 Ill. 488.

A town or adjoining towns may, by an implied contract, make itself or themselves liable to build, or assist in building, a bridge over a stream on a town-line road. *Rutland* v. *Dayton,* 60 Ill. 58; *Dayton* v. *Rutland,* 84 id. 279; *People ex rel.* v. *Supervisors,* 111 id. 527.

GEORGE S. SKINNER, for the Commissioners of Highways of Town of Dover:

The duty of building new bridges is not enjoined on the commissioners. The "improving and repairing," contemplated by the law, is of existing bridges. Commissioners can be compelled by *mandamus* only to perform such duties as are clearly, specifically and imperatively enjoined by law. Such duties are ministerial. *People ex rel.* v. *Comrs. of Highways,* 32 Ill. App. 164.

One town cannot compel an adjoining town to contribute to the making or repairing of a bridge over a stream dividing them without first showing a legal liability to such contribution, (*Rutland* v. *Dayton,* 60 Ill. 58,) but when such liability is shown, then such liability may be enforced by a suit at law. *Dayton* v. *Rutland,* 84 Ill. 279.

Sections 107, 108 and 109 of the Road and Bridge law of 1874, being substantially the same as sections 21, 22 and 24 of the present Road and Bridge law, must be taken and construed together in order to ascertain the true intent of the legislature. If no agreement has ever been made between the commissioners of the two towns in

regard to the erecting or repairing a bridge on a town line, no action can be maintained by the one against the other to recover for money expended on such bridge. *Town of Dimmick* v. *Town of Waltham*, 100 Ill. 631.

The law does not make it the imperative duty of commissioners to apply to the county board for aid until they have determined that the necessity exists. *People ex rel.* v. *Comrs. of Highways*, 118 Ill. 239.

While the language of the statute law on the subject has been changed since the *Walker case*, 21 Ill. 605, and the *Freeport case*, 41 id. 260, it seems apparent, upon close observation, the law itself has not been changed at all in its substance and meaning. While the statute of 1883 contains the same express declaration that such bridges shall be a town charge, to be borne by both towns, still other sections show there is no legal liability upon such towns unless assumed by such towns. *Ottawa* v. *LaSalle County*, 111 Ill. 527.

The commissioners of highways of each town have the right to judge of the necessity of a bridge, and the ability of their town to raise the means, by taxation, to pay the amount necessary for the purpose of completing it. *Town of Deer Park* v. *Bridge Co.* 3 Ill App. 570.

If the duty of a public officer is discretionary, and depends upon the exercise of judgment as to necessity or propriety, the court will not interfere, but will leave him in the free exercise of his discretion. *Supervisors* v. *People ex rel.* 110 Ill. 511; *People ex rel.* v. *Comrs. of Highways*, 118 id. 239; *Comrs. of Highways* v. *People ex rel.* 19 Ill. App. 253.

Mr. JUSTICE BAKER delivered the opinion of the court:

The relator, a resident of the town of Ohio, in Bureau county, and the owner of 640 acres of land lying in one body, (320 acres in said town, and 320 acres in the town of Dover, a town lying directly south of the town of Ohio,) filed in the circuit court of said county his petition for a writ of *mandamus* to compel the commissioners of high-

ways of said towns to hold a joint meeting and take the proper and legal steps for entering into a joint contract for the erection of a bridge over a stream on an established town-line road between said towns. The commissioners of the town of Ohio filed an answer, admitting all the material allegations of the petition. The commissioners of the town of Dover filed a demurrer to the petition. The circuit court sustained the demurrer and dismissed the petition, and rendered judgment against the relator for costs. On an appeal to the Appellate Court the judgment was affirmed, and this further appeal was then taken.

Sections 21 and 22 of the Road and Bridge law are as follows:

"Sec. 21. Bridges over streams which divide towns or counties, and bridges over streams on roads on county or town lines, shall be built and repaired at the expense of such towns or counties: *Provided*, that for the building and maintaining of bridges over streams near county or town lines, in which both are interested, the expense of building and maintaining any such bridges shall be borne by both counties or towns in such portion as shall be just and equitable between said towns or counties, taking into consideration the taxable property of each, the location of the bridge and the advantage of each, to be determined by the commissioners in making contracts for the same, as provided for in section 22 of this act.

"Sec. 22. For the purpose of building or keeping in repair such bridge or bridges it shall be lawful for the commissioners of such adjoining towns, whether they be in the same or different counties, or county boards of such adjoining counties, to enter into joint contracts, and such contracts may be enforced, in law or equity, against such commissioners jointly, the same as if entered into by individuals; and such commissioners or county boards may be proceeded against jointly, by any parties interested in such bridge or bridges, for any neglect of duty

in reference to such bridge or bridges, or for any damage growing out of such neglect."

Section 23 of the act makes provision for a case where one of the towns refuses to enter into a joint contract, and section 24 gives a remedy, where there is such a contract, to one town against the other in the event such other refuses to comply with its contract. The proceeding at bar, however, is under section 22, *supra*, where a remedy is given to any party interested in the bridge to enforce a joint contract against adjoining towns, jointly, for any neglect of duty in reference to such bridge.

If the case were that the commissioners of highways of the town of Dover and the commissioners of highways of the town of Ohio had never jointly constructed or agreed to construct a bridge over the stream called "Master's Fork," at the place where it is crossed by the public town-line road, then it would be governed by the case of *Comrs. of Highways of Town of Dimmick* v. *Comrs. of Highways of Town of Waltham,* 100 Ill. 631, where this court held, that in the absence of an agreement between the commissioners of highways of adjoining towns in regard to the·erecting or repairing of a bridge on the town line, there was no liability on the part of the one to the other to contribute to the cost of building or repairing such bridge. But the case admitted by the demurrer to the petition for a writ of *mandamus* is this: That a public road was laid out prior to 1859 between said towns, running east and west, the same having been laid out partly by the county commissioner's court before the adoption of township organization, and partly by the commissioners of highways of the towns of Ohio and Dover, acting jointly, after the adoption of township organization; that on January 5, 1859, the commissioners of highways of the towns of Dover and Ohio met for the purpose of perfecting said public highway, and divided said town-line road into districts, allotting to each town certain portions to be worked and kept in repair, thereby making the same

a town-line road; that said road is extensively traveled and of great public utility; that a large stream of water, called "Master's Fork," flows southward and crosses said town-line road near the south-east corner of section 2, in Dover township, and then flows south in Dover town; that said stream, where it crosses the said town-line road, is at times very deep and quite wide, and often during the year the water is high and furious; that said stream is impassable for carriages and wagons at any time of the year within the lines of the highway; that at the time said highway was perfected and made a town-line road, in the year 1859, it was conceded at a joint meeting of the commissioners of highways of said towns that a bridge spanning said stream was necessary for the public travel in order to make use of said road, and that under the law each town should contribute one-half to the erection of said bridge; that some time after establishing the said road, on January 5, 1859, the commissioners of highways of the towns of Ohio and Dover, acting jointly, erected a large wooden bridge across said stream where it crosses said town-line road; that said bridge spanned said stream, and was used from about the year 1860 until the year 1884 or 1885, when it became absolutely unsafe for public travel, finally falling and being washed away by the stream; that for the last eight or nine years said highway where said bridge crossed said stream has been wholly impassable for carriages and wagons at all times of the year, the eastern bank of said stream being very high; that there has been no way, for the last eight or nine years, said road could be traveled except by turning out of the highway to the northward and crossing the stream some distance north of the old site of the bridge, in the relator's field; that for the last eight or nine years relator has been compelled to allow public travel to pass through his fields, and has been compelled to keep up gates to accommodate said travel; that even then they are unable to haul· heavy loads along said

highway because of said bridge being gone. It is further admitted by the demurrer that the towns of Dover and Ohio are about equal in value as to taxable property; that the cost of a bridge would not exceed $1000; that the town of Ohio had appropriated, and raised by taxation, sufficient money for road and bridge purposes to build its proportion of said bridge, and that the town of Dover is abundantly able to construct its proper proportion of said bridge, and now has sufficient money on hand, levied for road and bridge purposes, with which to do so.

The facts stated in the petition may not be very artificially pleaded, but they clearly show that in 1859, at a joint meeting of the highway commissioners of the two towns, a joint agreement or contract was made that the original bridge across Master's Fork should be built and that each town should pay one-half of the cost of the erection of such bridge, and that the two towns, acting jointly, constructed the bridge about the year 1860; and also show that the public town-line road that passed over the bridge for some twenty-five years was extensively traveled and of great public utility; that said road is still extensively traveled, but that by reason of the bridge having fallen, public travel is forced to trespass upon private property, and heavy loads cannot be hauled along the highway. The petition does not, in terms, state that the agreement also was, to jointly repair or maintain. But from the facts alleged of the joint agreement to jointly build the bridge, of the subsequent joint construction of the same, and of the use made of the road and the bridge for public travel, the duty to jointly repair follows as a legal conclusion. Lord COKE, in 2 Inst. 700, 701, says: "But admit that none at all were bounden to the reparation of the bridge, by whom should it be repaired, by the common law? The answer is, by the whole county, etc., wherein the bridge is, etc., because it is for the common good and ease of the whole county." In *The King* v. *Inhabitants of the West Riding of Yorkshire,*

2 East, 342, it was held that, by the common law, if a
bridge be of public utility and is used by the public,
then the public must repair it, even though it was built
by an individual.   And the same rule was unanimously
held in the case of *Rex* v. *West Riding*, 5 J. Burrow, 2594,
where the common law doctrine was much considered.
In *State* v. *Town of Campton*, 2 N. H. 513, it was held that
a bridge, though erected by individuals, yet if dedicated
to the public and used by the public so long as to evince
its public usefulness, must be repaired by the public; and
also held, that under the statute of that State this public
duty devolved altogether upon towns, and in no case upon
counties.   See, also, *State* v. *Damasee*, 80 Ind. 519, and *State*
v. *Board of Comrs.* id. 478, which are cases of like tenor
and effect.

All of these authorities, with the exception of the two
last cited, were approved of by this court in *Town of Rut-
land* v. *Town of Dayton*, 60 Ill. 58.   It was there however
held, that under the statute then in force, in order to en-
able a town to compel an adjoining town to contribute
to the repairing or maintaining a bridge over a stream
dividing them, which bridge had been originally built by
private enterprise, there must be proof of the acceptance
of such bridge as a public bridge.   See, also, *Town of Day-
ton* v. *Town of Rutland*, 84 Ill. 279, where, in the same suit,
this court held that where a bridge over a stream divid-
ing two towns is recognized and accepted as a public
bridge by the proper officers of each town, each will be
liable to one-half of the expense of keeping the same in
repair.   Of course, no question of acceptance arises in
the case now before us in regard to the original bridge
across Master's Fork, for it is conceded that it was built
upon a public town-line road, jointly, by the lawful au-
thorities of the towns of Dover and Ohio, in pursuance of
a joint agreement or contract made between them.

The conclusion we deduce from that which we have
said is this:  that the repairing of a public bridge (when

such repairs are not chargeable to designated persons, lands, tenements or bodies politic,) is, by the common law, a public charge, and whenever the public authorities to whom is committed the matter of building, repairing and maintaining public bridges, either construct a bridge upon the line of a public road or recognize and accept for public use a bridge built there by others, and such bridge is used by the public, then liability for the cost of keeping such bridge in repair is by law imposed upon the county, town or adjoining towns, as the case may be, whose representatives such public authorities are. And it follows as a corollary, that the repairing of the original bridge over Master's Fork at the place where it is crossed by the public town-line road, it having been built by the towns of Dover and Ohio, jointly, and under a joint agreement between such towns, is a duty and a burden that, by the combined effect of the common law and the statute, is obligatory upon said two towns.

The towns of Dover and Ohio being jointly liable for repairs, are they, therefore, legally bound to build a new bridge in place of the original bridge, which it is admitted became rotten and unsafe, and finally fell and was washed away by the stream? "To restore" and "to renew" are given by lexicographers as synonyms of repair. It has always been held at the common law, that under a covenant to repair a tenant is obliged to rebuild, even in the case of the total destruction of the demised premises. In *Brecknock* v. *Pritchard*, 6 T. R. 750, it was held that a covenant binding a party to keep a bridge in repair bound him to replace it, although it was totally destroyed by a flood. In *People* v. *Hillsdale and Chatham, etc. Co.* 23 Wend. 254, where the duty imposed was one to keep in repair, and the bridges were carried away by a sudden freshet, it was held that the company was required to rebuild within a reasonable time. In *Rex* v. *West Riding*, *supra*, the indictment was for a failure to repair, and the proof was that the bridge had been taken away by a

flood, and a verdict of guilty was rendered, subject to the opinion of the court on the question "whether the inhabitants of the West Riding are obliged to rebuild the said new bridge," and the court of King's Bench unanimously answered the question in the affirmative. In *State* v. *Town of Campton, supra,* the bridge was mostly destroyed by an unusual rise of water in the river, and a verdict against the town was sustained. (See, also, *Briggs* v. *Guilford,* 8 Vt. 264.) In *State* v. *Board of Comrs. supra,* it was held that *mandamus* would lie against county commissioners to keep public bridges in repair, and that the duty to repair extended to replacing or rebuilding, where there was a substantial destruction of the original bridge. And in *Howe* v. *Commissioners,* 47 Pa. St. 361, where the words used in the statute were, "to repair," the court said: "If we should set aside the act altogether, the duty of maintaining the bridge, once legally imposed upon the county and never taken off, would still have to be enforced." And further said: "We cannot graduate repairs, and say slight ones shall be done and large ones may be neglected. The legislature did not mean we should do this. They meant by repairs, whatever was necessary to make bridges safe and passable."

The case now before us is essentially different from that presented to this court in *People ex rel.* v. *Comrs. of Highways,* 118 Ill. 239. In that case it was attempted to compel the commissioners of highways to build certain bridges that were wholly within the limits of their own town, and the element of an agreement with the commissioners of an adjoining town was wholly absent. The sections of the statute that are here involved,—*i. e.,* sections 21, 22, 23 and 24 of the Road and Bridge law,—did not enter into that case; and, moreover, it was there made to appear that the highway commissioners had exhausted their powers of taxation, and the funds so raised had been expended for other purposes. Here, on the contrary, the arrangement and agreement made in 1859 between the

adjoining townships for the construction and repair of the bridge on the public town-line road are admitted, and the suit is based on a statute specially applicable to such a case, which provides that such contract or agreement may be enforced in law or equity, the same as if entered into by individuals, and that the commissioners of the adjoining towns may be proceeded against jointly, by any parties interested in the bridge, for any neglect of duty in reference to such bridge; and it is conceded that both towns are abundantly able to construct their proper proportions of the bridge, and that they now have on hand sufficient money, levied for road and bridge purposes, to enable them to do so.

It is the law of this State that no town is legally liable, without its assent, to aid in the construction or repair of bridges over streams on town-line roads, or for bridges across a stream constituting a part of its boundary; but it is equally a part of the law that any town may voluntarily assume such liability by contract or agreement, express or implied. *People ex rel.* v. *Supervisors*, 111 Ill. 527; *Town of Rutland* v. *Town of Dayton*, 60 id. 58; *Town of Dayton* v. *Town of Rutland*, 84 id. 279; *Comrs. of Highways* v. *Comrs. of Highways*, 100 id. 631.

We think that under the circumstances of this case, as admitted to be true by the demurrer to the petition, there is an absolute duty imposed on the commissioners of highways of the town of Dover to join with the commissioners of the town of Ohio in repairing the bridge, by rebuilding it, and this being so, *mandamus* will lie. While it is the imperative duty of the commissioners of highways of the two towns to replace the bridge, they are necessarily invested with an incidental discretion as to the kind of new bridge to be built. But even this discretion, if abused or made to work injustice, can be controlled by *mandamus. Village of Glencoe* v. *People*, 78 Ill. 382; *Brokaw* v. *Comrs. of Highways*, 130 id. 482.

It was error to sustain the demurrer to the petition, and dismiss it out of court at the cost of the relator.

The judgments of the circuit and Appellate Courts are reversed. The cause is remanded to the circuit court, with directions to overrule the demurrer to the petition.

*Reversed and remanded.*