THE COMMISSIONERS OF HIGHWAYS OF THE TOWN OF
DEER PARK

v.

THE WROUGHT IRON BRIDGE COMPANY.

1. BRIDGE BETWEEN ADJOINING TOWNS.—To give a right under the
statute to one town to build a bridge at the joint expense of both, a prior
contract between the commissioners of highways for the joint building of
such bridge is an essential pre-requisite. No liability attaches to the com-
missioners refusing, even upon notice, to build without their previous consent,
evidenced by contract.

2. HOW CONTRACT SHOULD BE EXECUTED—MAJORITY OF COMMISSION-
ERS.—The contract for the building of such a bridge should be executed by
a majority of the commissioners of each town, acting as a separate body.
The statute does not contemplate a joint meeting of the two boards of com-
missioners, at which meeting a majority of the six can bind both towns.
Each town must be bound by the official action of its own board of commis-
sioners.

3. CONTRACT NOT SIGNED BY MAJORITY.—In this case the contract was
signed by only one member of the board of commissioners of one of the
towns, and therefore such town is not bound by the contract. Nor does the
fact that another commissioner of such town, after the completion of the
work, signed the contract, create a liability against the town where none
existed before. Commissioners of highways cannot bind their town by indi-
vidual acts. They can only act as an official body, and when met for the
transaction of public business.

APPEAL from the Circuit Court of LaSalle county; the Hon.
JOSIAH McROBERTS, Judge, presiding. Opinion filed May
2, 1879.

Mr. G. S. ELDREDGE and Mr. H. T. GILBERT, for appellants;
contending that as the town made no provision for taxation to
pay indebtedness, no indebtedness could lawfully be created,
cited City of Springfield v. Edwards, 84 Ill. 626; Reynolds v.
Shreveport, 13 La. An. 426; Goodrich v. Detroit, 12 Mich. 279.

Upon the rule of construction of the Constitution: People
v. Draper, 15 N. Y. 543; People v. Morrell, 21 Wend. 584;
Cooley's Con. Lim. 88; Newell v. The People, 3 Seld. 98; State
v. Johnson, 26 Ark. 281; Wolcott v. Wigton, 7 Ind. 48; People

v. Lawrence, 36 Barb. 177; People v. Orange Co. 27 Barb. 575; Supervisors v. The People, 25 Ill. 183; People v. Starne, 35 Ill. 121; Wabash R. R. Co. v. Hughes, 38 Ill. 174; Town of Lebanon v. O. & M. R. R. Co. 77 Ill. 539; The People v. Trustees, 78 Ill. 136; Updike v. Wright, 81 Ill. 49; Wheeler v. Chicago, 24 Ill. 107.

There is no inherent power in municipalities to levy taxes: Cooley on Taxation, 209; Chestnutwood v. Hood, 68 Ill. 132.

An issue of bonds in excess of the constitutional limitation of five per cent. would be void: McPherson v. Foster, 43 Iowa, 48.

Where a statute gives a new power and provides a way of executing it, the power can be executed in no other way: Mix v. Ross, 57 Ill. 121; Field v. The People, 2 Scam. 79; Middleport v. Ætna Life Ins. Co. 82 Ill. 562.

Commissioners of highways can exercise only such powers as are conferred on them by law: Commissioners v. Newell, 80 Ill. 587; Brauns v. Peoria, 82 Ill. 11.

They can bind the town only in the mode prescribed by the Statute: Dillon on Mun. Cor. § 383; Pease v. Chicago, 21 Ill. 500.

A person dealing with a municipal corporation is bound to learn the nature and extent of the authority of its officers: State v. Baltimore, 29 Md. 85; McDonald v. The Mayor, 68 N. Y. 23.

The Illinois is a navigable river, and any bridge built so as to obstruct navigation would be liable to be removed: Columbus Ins. Co. v. Peoria Bridge Co. 6 McLean, 70; Jolly v. Terre Haute Bridge Co. 6 McLean, 237; Holderman v. Beckwith, 4 McLean, 286.

The laws of the United States upon the subject of commerce are supreme: Sinnot v. Com'rs, 22 How. 227; Gibbons v. Ogden, 9 Wheat. 210.

Mr. E. F. BULL, for appellee; that all that is required of town officers is a substantial compliance with the law, and the presumptions are in favor of their official acts, cited The People v. The Auditor, 2 Scam. 567; Ballance v. Underhill, 3 Scam. 453; Todemier v. Aspinwall, 43 Ill. 401.

Commissioners of highways are a quasi-corporation: Com'rs. of Rutland v. Com'rs of Dayton, 60 Ill. 58.

Navigability of the Illinois river constitutes no defense to this action: Com'rs of Rutland v. Com'rs of Dayton, 60 Ill. 58; Dayton v. Rutland, 84 Ill. 279.

Navigability is a question of fact, not of law: Chicago v. McGinn, 51 Ill. 266.

PILLSBURY, P. J.    Action of assumpsit by appellee against appellant and the commissioners of highways of the Town of Utica, brought upon a contract alleged to have been made on the 25th day of May, 1876, by the commissioners of the towns of Deer Park and Utica, jointly, with the appellee, by which the appellee was to build a bridge across the Illinois River, on the line between the towns, for the sum of $17,400.

The declaration avers performance by the appellee, and refusal to pay by the commissioners.

The appellant filed the general issue and a plea denying the execution of the contract, both verified by affidavit, and several special pleas, to which a demurrer was sustained. Upon a trial the appellee recovered a judgment for the amount claimed with interest, and the commissioners of Deer Park appealed.

The record shows that on the 2nd day of February, 1876, the commissioners of both towns met, and a motion was made that the commissioners of highways of Deer Park enter into a contract with the town of Utica to build such bridge, which motion was lost. After this action the commissioners of highways of Utica, with J. Shaugnessy, one of the commissioners of Deer Park, held several meetings, and served notices upon R. B. Williams and Nelson Willey, the other two commissioners of Deer Park, to meet with them, which they steadily refused to do, until the commissioners of Utica had advertised for proposals to build the bridge. At the time the proposals were submitted, all were present, and the bids taken under advisement.

From this time no more joint meetings were held, and no contract was entered into by the commissioners of Deer Park.

On the 25th of May, however, the commissioners of highways of Utica executed the contract sued upon, and Shaugnessy signed it as commissioner of Deer Park. On same day the appellee executed a contract to the commissioners of Utica, reciting the contract in suit, and the fact that it had been signed by only one of the commissioners of Deer Park, and guaranteeing that the town of Utica should not be called upon to pay more than one-half of the cost of the bridge; and in case Deer Park refused to pay for one-half the bridge, then the commissioners of Utica were to sue those of Deer Park, to recover their proportion of the cost of the bridge, and that the bridge company would pay one-half of the costs and attorneys' fees in prosecuting such suit.

After the making of these contracts, and before any work was done upon the bridge under the same, the two commissioners of Deer Park who had not joined in the contract, together with the supervisor and town clerk of said town, served a written notice upon the commissioners of Utica and the appellee, that no contract would be entered into or liability incurred or recognized on the part of Deer Park in the construction of said bridge. The appellee, however, went on and completed the bridge under said contract, and it is conceded that up to the time the work was done and the money due under the terms of the agreement, that a majority of the commissioners of Deer Park took no part in building the bridge in question, or the letting of the contract, except as above set forth.

After the completion of the bridge, for some reason not shown in the record, R. B. Williams, one of the commissioners of Deer Park, who up to this time had, on behalf of his town, steadily opposed the creating of any liability against his town, acting in conjunction with Shaugnessy, passed resolutions reciting the fact of the neglect of the commissioners of Deer Park to join in building said bridge, or to enter into a joint contract for its erection, and accepting said bridge as a part of the public highway, pledging the town to maintain its portion of it, and ordering the supervisor and town clerk to issue bonds for the payment to appellee of one-half the contract price. Williams also, after said bridge was completed, attached his

name to the contract of May 25th, 1876, and it is upon this execution of the contract that the alleged joint liability arises. This signing by Williams was, so far as the record discloses, without any consultation with or authority from his co-commissioners.

The respective towns, prior to May 25th, 1876, held an election under section 112 Ch. 121, Rev. Stat. 1874, which resulted in a vote in favor of "borrowing money to build a bridge," but no amount was specified, or time in which payment should be made, nor was any provision whatever made by either town for the payment thereof by appropriate taxation.

The above facts are all that are essential to state to a proper understanding of the case, and the question arises whether upon such facts a legal liability arises against the town of Deer Park.

Section 108 of the road and bridge act of 1874, provides that "For the purpose of building and keeping in repair such bridge or bridges, it shall be lawful for the commissioners of highways of such adjoining towns or counties to enter into joint contracts, and such contracts may be enforced in law or equity against such commissioners jointly, the same as if entered into by individuals, and such commissioners may be proceeded against jointly by any parties interested in such bridge or bridges for any neglect of duty in reference to such bridge or bridges, or for any damages growing out of such neglect."

By the 109th section: "If the commissioners of highways of any of such towns, after reasonable notice in writing from the commissioners of highways of any other such towns, shall neglect or refuse to build or repair any such bridge, when any contract or agreement has been made in regard to the same, it shall be lawful for the commissioners so giving notice to build or repair the same, and to recover by suit one-half (or such amount as shall have been agreed upon), of the expense of so building or repairing such bridge, with costs of suit and interest from the time of completion thereof from the commissioners so neglecting or refusing."

This statute is clear, that to give a right to one town to build a bridge at the joint expense of both, a prior contract between

the commissioners of highways for the joint building of such bridge is an essential prerequisite; that no liability attaches to the commissioners refusing even upon notice to build without their previous consent evidenced by contract. The commissioners of highways of each town have the right to judge of the necessity of a bridge, and the ability of their town to raise the means by taxation to pay the amount necessary for the purpose of completing it.

If the commissioners of a large and wealthy township could enter into a contract for the construction of a bridge across a stream dividing the towns, and then collect the one-half from the adjoining town, it would be in their power to bankrupt the latter when of not sufficient ability to bear a burden thus imposed. The contract for the building such bridge should in our opinion be executed by a majority of the commissioners of each town acting as a separate body. That the statute does not in this instance contemplate a joint meeting of the two boards of commissioners, at which meeting a majority of the six can bind both towns. That while the contract is joint and binding upon the two towns jointly, yet each town must be bound by the official action of its own board of commissioners.

In this case it is admitted that only one of the commissioners of highways of Deer Park executed the contract in suit until after the bridge was completed, and that the commissioners of said town, or a majority of them, refused to enter into such contract or to incur any liability upon behalf of their town respecting such work.

As a majority of the commissioners of Deer Park did not, prior to the commencement or completion of the work, enter into any contract binding upon their town, we fail to see how the town became bound to the appellee, or wherein there was any privity of contract between them. Did then the action of the commissioner Williams, in signing said contract after the completion of the work, create a legal obligation against his town? We think it did not. Up to this time no obligation, as we have seen, rested upon the town to pay for the bridge. The bridge had not been constructed under the supervision of its officers. The bridge had been built by the

appellee, relying upon its contract with the commissioners of Utica.

That they both knew the contract was not binding upon Deer Park, is evident, from the fact that the commissioners of Utica would not themselves contract for the letting of the work to appellee until it had given them a guaranty that their town should not be liable to the appellee for more than one-half the cost thereof.

There being then no valid prior obligation upon the part of Deer Park, we are of the opinion that Williams could not of himself, by simply signing as one commissioner, create a liability where none existed before. The commissioners of highways, it is apprehended, cannot bind their towns by individual acts; there must be concert of action by at least two of them when met for the transaction of public business. The board of commissioners being a *quasi* corporation, Town of Rutland v. Town of Dayton, 60 Ill. 58, can only act as an official body. Boughton v. McDonough County, 84 Ill. 392. They are public agents, and can bind their principal only when exercising the powers vested in them by the statute, and in the time and manner designated by the law.

The individual act of Williams, therefore, in executing the contract with appellee after the bridge was built, thereby endeavoring to create a privity of contract where none existed previously, was invalid, and created no legal obligation against his town.

These views render it unnecessary to notice the point made, that the Constitution, Sec. 12, Art. IX., prohibited the issuing of bonds under the vote of the town to borrow money to build a bridge, because no provision was made by the town for the payment of the same by appropriate taxation at or before the time of creating such indebtedness. Whether this be so or not, which we do not now determine, it would seem that the vote of the town was only a delegation of power to the commissioners of highways to enter into a contract to build a bridge, and order bonds to be issued as the work progressed for the payment thereof, thereby creating an indebtedness upon the town, as contemplated by the vote. The commissioners

had the power, notwithstanding the vote, to determine whether they would enter into a contract with the appellee. , The vote of the town did not establish a privity of contract between it and the appellee, and until a valid contract was made, the appellee had no right under such vote that it could enforce at law.

This action rests upon contract, and to entitle the appellee to recover it must show an agreement executed by the commissioners of highways in such manner as will make the judgment recovered a charge upon the town. In our opinion no such contract is shown to exist in this case.

The judgment must be reversed and the cause remanded.

Judgment reversed.

LELAND, J. having passed upon some of the questions here involved in another proceeding relating to this same bridge, took no part in the decision of this case.