THE COMMISSIONERS OF HIGHWAYS OF THE TOWN OF DIMMICK

v.

THE COMMISSIONERS OF HIGHWAYS OF THE TOWN OF WALTHAM.

*Filed at Ottawa November 10, 1881.*

1. STATUTE—*several statutes on same subject to be construed together.*
Where several sections of a statute have a bearing upon the same subject,
they will be construed together, in order to arrive at a correct conclusion as
to the legislative intent in the several different sections.

2. BRIDGES—*on town lines—right of one town to call on the other for
contribution.* In the absence of any agreement between the commissioners
of highways of two adjoining towns in regard to the erecting or repairing of
a bridge on the town line, no action can be maintained by the one town against
the other to recover for any portion of the money expended on such bridge.
In a suit by one town against another to compel the latter to contribute to
the cost of a bridge on the town line, an agreement between the officers of
the two towns in respect to such bridge must be averred and shown to author-
ize a recovery.

APPEAL from the Appellate Court for the Second District;—
heard in that court on writ of error to the Circuit Court of
La Salle county; the Hon. FRANCIS GOODSPEED, Judge, pre-
siding.

This was an action brought by the Commissioners of High-
ways of the township of Dimmick, in the county of La Salle,
against the Commissioners of Highways of the township of
Waltham, in the same county, to recover one-half of the cost
of a bridge erected across Tomahawk creek, on the town line
between the two towns.

To the declaration the defendant filed a special plea, in
which it was in substance averred, that long prior to the
building of the bridge in the declaration mentioned, to-wit,
on the 12th day of March, 1855, the commissioners of the
two towns caused to be laid out a highway, running north
and south upon the line dividing the two towns, from the
southern to the northern boundary thereof; that after the

highway was laid out, to-wit, May 23, 1856, a meeting of the commissioners of highways of the two towns was held for the purpose of dividing the highway into road districts, and allotting an equal number of such districts to each town; that a contract was then and there entered into, as follows: "At a meeting of the commissioners of highways of the towns of Dimmick and Waltham, in the said county, held in the said town of Dimmick on the 23d day of May, 1856, for the purpose of dividing a road running between the said towns; and it is ordered that such highway be divided into four road districts, as follows, to-wit: that part thereof from the southwest corner of section 31, in the town of Waltham, to the half section line of section 30, shall be one of the said districts, and shall be allotted to the town of Waltham; thence to the north-west corner of section 19 shall be one of said districts, and shall be allotted to the town of Dimmick; thence to the half section line of section 7 shall be one of said districts, and shall be allotted to the town of Waltham; thence to the north-west corner of section 6 shall be one of said districts, and shall be allotted to the town of Dimmick,"—executed by all the commissioners, May 23, 1856; that the road was opened, and the portion allotted to each township by the contract was worked and kept in repair by each, as provided in the agreement, from the 23d day of May, 1856, until the commencement of this suit; that the bridge in plaintiff's declaration mentioned was and is located within a short distance of the northern boundary line of said towns, and wholly within the road district on the north end of the highway, which was by agreement allotted to the town of Dimmick; that on the 1st day of June, 1856, the plaintiff commissioners, as a part of its duty under the division aforesaid, did construct a bridge across Tomahawk creek, and that the commissioners again, on, to-wit, the 7th day of June, 1874, in pursuance of the contract, and its duty, did build, construct and repair the bridge, as it was the duty of the plaintiff to do.

To this plea the plaintiff filed a general demurrer, which was carried back and sustained to the declaration.

The declaration to which the court sustained a demurrer was as follows:

"For that whereas, heretofore, to-wit, the 29th day of June, A. D. 1874, at, to-wit, said county of La Salle, there was a bridge over Tomahawk creek, on the town line between said towns of Dimmick and Waltham; that said bridge was then, by reason of natural wear and decay, dangerous to pass over or upon with teams; that by reason of such dangerous condition it became and was necessary to build a new bridge over said creek at the same place, therefore the said plaintiff commissioners called the attention of said defendant commissioners to the condition of said bridge, and the necessity of rebuilding the same, and requested their coöperation to that end; that said defendant commissioners refused to coöperate with said plaintiff commissioners. Thereupon said plaintiff commissioners caused a notice in writing to be delivered to each of said defendant commissioners, which notice was in the following words and figures:

"'To John Hill, Jacob Barr, and Billman, Commissioners of Highways of the Town of Waltham, County of LaSalle, and State of Illinois:

"'*Gentlemen*—You are hereby notified and requested to meet us, the undersigned commissioners of highways of the town of Dimmick, of said county of LaSalle, and State of Illinois, on Saturday, the eleventh (11th) day of July, A. D. 1874, at the hour of two o'clock P. M., at the bridge crossing the Tomahawk creek, on the town line between the towns of Waltham and Dimmick, for the purpose of considering the propriety of building a new bridge at said place and over said creek, the old bridge being now dangerous and unfit for use. Said bridge stands on the east of section 12, in said town of Dimmick.'

"That notwithstanding said notice said defendant commissioners positively refused to meet said plaintiff commissioners, as requested by said notice, and thereafter, upon several occasions, said plaintiff commissioners in person requested said defendant commissioners to unite with them in the building of said bridge; that said defendant commissioners always unqualifiedly and positively refused to take any action toward the building of said bridge, asserting that the town of Waltham was not legally responsible to contribute towards building, repairing or maintaining said bridge. Plaintiff further avers, that on and prior to said 29th day of June, 1874, there was a legally laid out and traveled highway on the town line between said towns, from the south to the north boundary thereof, and that said Tomahawk creek crossed said road diagonally on said town line, between section 12 in the town of Dimmick and 7 in the town of Waltham, at which point of crossing said bridge was located. Plaintiff further avers, that after the service of the notice aforesaid, and the refusal of said defendant commissioners aforesaid, said plaintiff commissioners proceeded and caused said old bridge to be removed and a new one to be erected in the place thereof, at a cost of $1100, whereby an action hath accrued to the plaintiff to have and recover of said defendant one-half of said sum, the sum of $550, which remains wholly unpaid, and to pay the same defendant hitherto hath, and still does, refuse, to the damage of said plaintiff of $3000, and therefore suit is brought."

Messrs. BLANCHARD & BLANCHARD, for the appellant:

The question presented by this record involves a construction of sections 107, 108 and 109 of the Road and Bridge law of 1874. Rev. Stat. 1874, p. 930.

1.   The common law, and formerly the statute law of this State, imposed upon the counties the burden of maintaining roads and bridges within their respective borders. *People*

*ex rel.* v. *Canal Trustees,* 14 Ill. 402; *Dennis* v. *Maynard,* 15 id. 477.

2.   The words in section 109, "when any contract or agreement has been made in regard to the same," were not intended to limit the liability imposed by section 107 to cases where adjoining towns agree to jointly build a bridge. If they are so held, then there is no liability imposed by law upon adjoining towns to build bridges on town lines, and section 107 is rendered inoperative and useless.

3.   The intention of the legislature is to be deduced from a view of the whole and every part of the statute taken and compared together, and that interpretation should be adopted that will give force and effect to each and every part. *Zarresseller* v. *People,* 17 Ill. 101; *Stribling* v. *Prettyman,* 57 id. 371; *Decker* v. *Hughes,* 68 id. 33.

Mr. G. S. ELDRIDGE, for the appellee:

1.   The contract between the two towns, embracing no express provision for the maintenance of a bridge on the town line, created no joint liability by which the two towns were bound to maintain any bridge, though doubtless such a contract would have been lawful, and within the corporate power of the towns.

2.   That section 107, taken in connection with sections 108 and 109 of the act of 1873, by which it is supplemented, fails thus to create an absolute joint liability by force of the statute itself, is equally clear.   These sections must be read together to arrive at proper conclusions as to legislative intent.

3.   Section 109 of the act of 1874 absolutely limits the right to enforce the payment of money for the building of a bridge by one town against an adjoining town, except when a "contract or agreement has been made in regard to the same." It is supposed by appellant's counsel if it were not for this provision their interpretation of the statute would not be questioned; but such is not true.

4.   The attention of the court is called to the opinion of the Appellate Court for the Second District, in *Comrs. etc. of Deer Park et al.* v. *Wrought Iron Bridge Co.* 3 Bradw. 574, construing the act of 1874.   It will be observed that section 108 of the last cited act provides for the entering into joint contracts by the commissioners of the towns for the maintenance of the bridges provided for by section 107; and by section 109 the liability of one town to another and the right of action for the enforcement of such liability rests entirely upon the existence of an antecedent contract, whereby a joint liability for the erection or maintenance of the bridge was created.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

There is no common law obligation resting on towns to erect or keep in repair bridges within their respective borders, or upon town lines.   If adjoining towns are liable to contribute equally to the erection and keeping in repair of bridges on town lines, that liability exists by virtue of our statute.   It is contended by appellant that the liability in this case is imposed by sec. 107, Rev. Stat. 1874, p. 930, which declares: "Bridges over streams which divide towns or counties, and bridges over streams on roads on county or town lines, shall be built and repaired at the equal expense of such towns or counties: *Provided,* that for the building and maintaining of bridges over streams near county or town lines, in which both are equally interested, the expense of building and maintaining any such bridges shall be borne equally by both counties or towns."   If this was the only section of the statute relating to the subject, there would be much force in the position of appellant.   But while this section of the statute, when read alone, would seem to impose the liability, it must, however, be read and construed in connection with other sections of the statute bearing on the subject.   In this way only can the true intent of the legislature be ascertained, and a cor-

rect conclusion reached in regard to what was intended by the enactment of the different sections of the statute.

Section 108, which immediately follows the section relied upon, declares: "For the purpose of building or keeping in repair such bridge or bridges, it shall be lawful for the commissioners of highways of such adjoining towns or counties to enter [into] joint contracts, and such contracts may be enforced in law or equity against such commissioners jointly, the same as if entered into by individuals, and such commissioners may be proceeded against jointly, by any parties interested in such bridge or bridges, for any neglect of duty in reference to such bridge or bridges, or for any damages growing out of such neglect." The power to enter into joint contracts named in this section, was conferred subject to such other provisions as are contained in the statute, and must be read in connection with the following section 109, which declares: "If the commissioners of highways of either of such towns, after reasonable notice in writing from the commissioners of highways of any other such towns, shall neglect or refuse to build or repair any such bridge, when *any contract or agreement has been made in regard to the same,* it shall be lawful for the commissioners so giving notice to build or repair the same, and to recover by suit one-half (or so much as shall have been agreed upon) of the expense of so building or repairing such bridge, with costs of suit, and interest from the time of the completion thereof, from the commissioners so neglecting or refusing."

It will be observed that section 107 contains no provision whereby one town can compel another to erect or repair a bridge on a town line. The section is a mere declaration of the rule or principle which shall govern when other preliminaries have been settled between the towns, as declared in section 109. Section 108 merely authorizes the commissioners of the two towns to meet together and confer, one board with the other, and if they see proper they may, under

this section, contract with a third party to repair or build a bridge on the town line, and as to such third party they will be bound and held liable on such contract. Neither of these sections directly or indirectly confers authority upon the commissioners of one town to compel the commissioners of an adjoining town to repair or erect a bridge on a town line, or pay one-half of the cost of such bridge after it may be erected or repaired. As between two adjoining towns, where a bridge has been erected or repaired on a town line by one, no remedy is provided until we come to section 109. That section provides the remedy, but the remedy provided is conditional, and can only be enforced where a contract or agreement has been made by and between the commissioners of the two towns in regard to the bridge. If no agreement has ever been made between the commissioners of the two towns in regard to erecting or repairing a bridge on a town line, no action can be maintained by the one against the other to recover for money expended on such bridge. Whether the provision in section 109, confining the remedy to cases where a contract or agreement has been made in regard to the bridge, is a wise one or not, is a matter with which the courts have no concern. It was for the legislature to determine under what circumstances the commissioners of one town might maintain an action against the commissioners of another town, and when that body has so determined, courts can not, by judicial construction, disregard a plain provision of the statute. We perceive no ground upon which the action can be maintained, unless the words "when any contract or agreement has been made in regard to the same," contained in section 109, are disregarded, and we are aware of no rule in the construction of statutes which would authorize us to ignore those words in placing a construction upon the statute. But we do not think the limitation upon the commissioners of one town to sue the commissioners of another, and thus compel them to contribute one-half of the

cost of erecting a bridge over a stream on a town line, was inserted in the statute inadvertently, or without a wise purpose. If the commissioners of one town have the power to compel the commissioners of another town to contribute one-half of the cost of erecting a bridge over a stream on the line between two towns, without a prior contract or agreement, by merely serving a notice, there are many cases where a densely populated township might bankrupt and bring ruin upon an adjoining township containing but few inhabitants and a small amount of taxable property. For instance, take two townships separated by the Illinois river, one containing within its limits a large city and a large amount of taxable property, the other containing but few inhabitants and a small amount of taxable property,—the commissioners of the rich and populous township desire a bridge over the river which forms the boundary line between the two, which will cost $150,000,—did the legislature ever intend by the enactment of section 107 that the township without capital or resources can be compelled, against its will and without an agreement, to contribute $75,000 to pay for the erection of the bridge? We can not believe such a result was ever within the contemplation of the legislature, and yet should the construction of the statute contended for by appellant prevail, such results would necessarily follow.

If we are correct in these views, it follows that the declaration did not state a cause of action, and the demurrer was properly sustained thereto.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*