EUGENE BROWN, APPELLEE, V. COUNTY COMMISSIONERS OF MERRICK COUNTY AND JOHN L. MEANS, APPELLANTS.

1. Counties: ADVERTISEMENT FOR BIDS FOR BRIDGES. Where a county board advertise for bids for the erection of a public bridge which will cost to exceed $500, in a newspaper printed and of general circulation in the county, and also with a considerable circulation throughout the state, but one advertisement continued for four consecutive weeks is necessary.

2. ———: SELECTION OF PAPER TO ADVERTISE IN. Where the county board act in good faith, their decision as to the selection of a paper in which to advertise cannot be attached in a collateral proceeding.

3. Bridges Between Adjoining Counties. Sections 87 and 88 of the road law merely authorize the county boards of counties separated by a stream to meet and confer together in regard to the erection, jointly, of a bridge across such stream, and to enter into a joint contract for that purpose, but in the absence of a contract there is no power in one board to erect or repair a bridge across such stream, and compel the other board to pay part of the cost.

4. Counties: ERECTION AND REPAIR OF BRIDGES. The court will not control the discretion of the county board as to what bridges they shall erect or repair, unless there is a clear abuse

of the trust, even where there are not sufficient funds available to erect or repair all necessary bridges. So long as such board act within the scope of their authority, an injunction will not lie to restrain them.

5. ———: BRIDGES BETWEEN ADJOINING COUNTIES: PRECINCT BONDS. Where the middle of a stream is the dividing line between two counties, and a bridge is erected across said stream by the county board of one of such counties, without the co-operation of the county board of the other, the county erecting the bridge may use precinct bonds, voted for that purpose to complete the bridge in the county not co-operating in the erection of the bridge.

6. Bridges: INJUNCTION DOES NOT LIE TO RESTRAIN PAYMENT TO CONTRACTOR. A tax payer who seeks to enjoin the payment of money for the erection of a public bridge which he claims is being constructed in violation of law, must act with reasonable promptness. If he is guilty of gross laches, and knowingly permits the contractor to incur liabilities in good faith in the construction of the greater portion of the work, an injunction will be denied.

APPEAL from Merrick county. Heard below before POST, J.

*John Patterson,* for appellant commissioners. *O. A. Abbott,* for appellant Means.

*A. Ewing* and *M. Whitmoyer,* for appellee.

MAXWELL, J.

This action was brought in the district court of Merrick county to enjoin the county commissioners of said county from issuing the warrants of Merrick county to John L. Means for building a public bridge across the Platte river south of the village of Clarks in said county, and the treasurer from paying or registering the same, and to have a contract entered into by said commissioners with said John L. Means on or about the 20th of September, 1884, for the erection of said bridge, declared null and void. On

the trial of the cause the court below found the issues in favor of the plaintiff, and made the injunction perpetual.

It appears from the record that on the 19th day of August, 1884, the county commissioners of Merrick county issued a proclamation for a special election in Clarksville precinct, to vote on a proposition to issue the bonds of said precinct to the amount of $3,000, to aid in building a bridge over the Platte river south of the village of Clarks; that at the time this proposition was submitted there was a public bridge over the river near the point where it was proposed to erect the new one; that this bridge had been erected largely with funds provided by the precinct, but the bridge was then a public thoroughfare under the control of the county commissioners; that by reason of the high water in 1884 and decay, the bridge had become unsafe for travel, and it was necessary either to make expensive repairs thereon or rebuild it. At the time the county commissioners submitted the proposition for bonds in Clarksville precinct they caused an advertisement to be published in the *Nonpariel*, a newspaper published at Central City, in said county, for proposals to erect the bridge in question, and use such materials in the old bridge as were suitable for that purpose. In pursuance of such notice, the proposition for bonds having carried in Clarksville precinct, the commissioners on the 20th day of September, 1884, let the contract for the bridge in question to John L. Means, one of the defendants, for the sum of $3.25 per lineal foot. Mr. Means commenced work at once, and on the 7th day of December, 1884, when this suit was commenced had performed about three-fourths of the labor in building the bridge. It also appears that at the letting of the contract there were a number of other bidders and that Mr. Means was the lowest bidder. The Platte river at the point where the bridge is located has a number of channels, the widest one being on the south side, and the boundary line between Polk and Merrick

counties is the middle of the south channel.   There is tes-
timony in the record from which it may be inferred that
the county commissioners of Polk county refused to join
with the commissioners of Merrick county in erecting
the bridge.    It also appears that the cost of repairing
the old bridge would have been, as Mr. Means testifies,
about $7,000.   The plaintiff is a resident and tax payer
of Merrick county, and has resided there for several years.
In his direct examination he states that he was not aware
of the building of the bridge until the 6th day of Decem-
ber, 1884.   On cross-examination, however, he states he
took and read the county newspapers, including the *Non-
pariel,* in which the notice was published; that he saw the
advertisement for the letting of the contract; that he knew
of the letting of the contract for the construction of the
same.   He had formerly been one of the county commis-
sioners of Merrick county and evidently is a man of at
least ordinary intelligence.    His statement, therefore, on
his direct examination, unless the result of oversight, is
somewhat remarkable.

The first ground in the petition upon which an injunc-
tion is claimed is, in substance, that the bridge is about
2,500 feet in length, and will call for the expenditure of
$8,325, and no advertisement was published in any news-
paper published outside of Merrick county asking for bids
for the building of said bridge, prior to the letting of said
contract; nor did said county commissioners of record at
any time prior to the letting of said contract, in their pub-
lic proceedings whilst sitting as a board for the transaction
of the business of said county, direct any advertisement to
be published in any newspaper published in said county,
asking for bids for the building of said bridge.   2d, Be-
cause the Platte river separates Merrick from Polk county,
and the whole expense is to be borne by Merrick county;
3d, The amount of road and bridge fund in Merrick county
in the treasury at that time did not exceed the sum of

$2,389.69, and that the amount of the levy for those funds for 1884 did not exceed the sum of $6,241.83, and no distinct road fund, and that but two-thirds of the levy is available for the current year, etc., the amount to be expended on said bridge being in excess of the funds available for that purpose. It is also alleged that on the 7th day of October, 1884, the commissioners delivered to Means a warrant on the bridge fund of said county for the sum of $1,200, and on the 11th day of November of that year a warrant for $1,800 on said fund, "thus anticipating and undertaking to prevent and make useless the taking appeal on the part of any tax payer of said Merrick county who might desire to appeal to the district court from their order allowing said warrants within ninety days from the making of the same," etc. These grounds will be considered in their order.

*First,* The advertisement.

Sec. 84 of the act in relation to roads (Comp. St., 7, Ch. 78,) provides that, "Before any contracts as aforesaid shall be let, the county commissioners shall advertise for bids therefor, and shall require bidders to accompany their bids with plans and specifications of the work, and they may accept the most suitable plan and award the contract accordingly, or may reject any or all bids."

"Sec. 85. Such advertisement shall state the general character of the work, and shall be published four consecutive weeks in some newspaper printed and of general circulation in the county; and where the cost of the work exceeds five hundred dollars such advertisement shall also be published in some newspaper printed in and of general circulation throughout the state."

The amount required to construct this bridge clearly brings it within that class of cases where the advertisement must be published four consecutive weeks in a newspaper printed and of general circulation in the county, and also in a newspaper printed in and of general circulation

throughout the state.  A newspaper may have so general a circulation as to embody both of these conditions.  In such case it would not seem to be necessary to insert the advertisement in two papers, as the advertisement in one would accomplish all that was desired, viz., publicity, in order that competition in bidding may be induced and contracts let for the lowest price possible.  The county board, however, are to determine in the first instance the paper or papers in which the advertisements are to be inserted, and if they act in good faith, although erroneously, in carrying out the law, their acts in that regard are not open to collateral attack.    *Com. of Knox County v. Aspinwall*, 21 How., 539.    *Brown v. Otoe County*, 6 Neb., 115.    *Ellis v. Karl*, 7 Neb., 382.    There is no charge of bad faith on the part of the commissioners or of fraud or corruption.  The testimony shows that from seventy-five to eighty copies of the *Nonpariel* circulated in nearly all parts of the state outside of Merrick county.  Other papers in the state no doubt have a much greater general circulation in the state, but in the absence of fraud, corruption, or bad faith on the part of the county board, or of injury to the plaintiff, which is not claimed, this cannot be inquired into in this collateral proceeding.  Their first ground for injunction, therefore, is not well taken.

*Second,* Because the Platte river separates Merrick from Polk county, and the expense should be borne equally by those counties.

Sec. 87 of the act relating to roads provides that " bridges over streams which divide counties, and bridges over streams on roads on county lines shall be built and repaired at the equal expense of such counties," etc.

Sec. 88 provides the mode in which counties may enter into joint contracts for the erection and repair of such bridges.  The provisions of the statute apply only to cases where adjoining counties have jointly constructed a bridge or bridges over a stream which separates them, or to joint

contracts of such counties for the erection of such bridges. There is no provision in the statute in the absence of an agreement by which one county may compel an adjoining one to join in the erection or repair of a bridge across a stream separating one county from the other. This question was before the supreme court of Illinois under a similar statute. *Com's of Highways v. Com's of Highways*, 100 Ill., 631. After copying the sections of the statute, it is said: " Neither of these sections directly or indirectly confers authority upon the commissioners of one town to compel the commissioners of an adjoining town to repair or erect a bridge on a town line, or pay one-half of the cost of such bridge after it may be erected or repaired." *The State v. Kearney County*, 12 Neb., 6. The second ground, therefore, is insufficient.

*Third.* That the amount of road and bridge fund on hand at the time the contract was let did not exceed $2,089.69, while levy for those funds for that year was the sum of $6,241.83, but two-thirds of which was available. This would place at the disposal of the commissioners more than $6,000 of the road and bridge fund, to which should be added the Clarksville precinct bonds, making more than $9,000 in all. The exact length of the bridge does not appear, being estimated at from 2,100 to 2,500 feet. This at $3.25 per lineal foot, even if we take the greatest length shown, would amount to but little more than $8,000. Mr. Kramer, one of the county commissioners, states that before letting the contract the commissioners measured the river by tying a band around the felloe of a wagon wheel, and counting the revolutions, and that the width of the river was about 2,100 feet. He also testifies, in substance, that in the opinion of the commissioners, upon actual view, the best interests of the county required the construction of a new bridge.

In *State v. Kearney County*, 12 Neb., 6, it was held that where there are not sufficient funds in the county

treasury to repair all the bridges in a county, the court will not control the discretion of the county board as. to what bridges they shall erect or repair unless there is a clear abuse of the trust.    The erection and repair of bridges in a county are specially committed to the county board of each county.    Such board are presumed, from personal inspection or otherwise, to · know what bridges should be erected or repaired.    So long, therefore, as such board act within the scope of their authority an injunction will not lie to restrain their action.    But it is said that even if the board had authority to construct that portion of the bridge in Merrick county it had no power to cross the line into Polk county and erect a bridge in that county.    This, if applied to a stream wholly in Polk county, doubtless is true; but when applied to a stream partly in both counties is not so clear.    Nor is the question presented in this case.    The statute provides that the southern boundary of Merrick county shall be the middle of the south channel of the Platte river.    (Comp. Stat., Ch. 17.)    The width of the south channel of the river is shown to be about 1,300 or 1,400 feet.

The right of the county board to use the bonds donated by Clarksville precinct for the completion of that portion of the bridge in Polk county is unquestioned.    *Railroad Company v. Otoe County*, 16 Wall., 667.    *Walker v. City of Cincinnati*, 21 O. S., 14.    *Sharpless v. Mayor*, 21 Penn. St., 147.    *Goddin v. Crump*, 8 Leigh, 120.    If this was not so the right to make donations to railways as public highways could not be maintained.    In *Railroad v. Otoe County* a donation to a railway company in Iowa which proposed to run its road to the east bank of the Missouri river opposite or near Nebraska City was sustained.    While in *Walker v. Cincinnati* the power of the city to issue its bonds for the purpose of constructing a railroad from Cincinnati south through one or more states was confirmed. The testimony shows that there are less than 700 feet of

the bridge in Polk county, the cost of which was less than $2,000, leaving probably not less than $1,000 derived from bonds to be expended on other parts of the bridge. The county board, therefore, need not, and probably did not, expend any part of the road and bridge fund in Polk county. . The third cause, therefore, is untenable.

*Fourth.* But even if the county board had exceeded its powers somewhat, a tax payer could not wait until the contractor had performed a considerable portion of the work of which the public would have the benefit, and which would be lost to the contractor, and then enjoin the payment of the work. *Whitney Arms Co. v. Barlow,* 63 N. Y., 63. *City of East St. Louis v. The E. St. L. G. L. Co.,* 98 Ill., 415. *Bradley v. Ballard,* 55 Id., 413. *The Rider L. R. Co. v. Roach,* 97 N. Y., 378. *Tash v. Adams,* 10 Cush., 252. In the last case cited the inhabitants of the town of Natick appropriated $500 for the celebration of the second centennial anniversary of the settlement of the town, and authorized the committee appointed for that purpose to draw from the town treasury an amount not exceeding the sum named. The committee acting under this vote proceeded to make contracts on behalf of the town for the purpose named and expended thereby the sum of $463.00. The celebration took place on the 8th of October, 1851, under the sanction of the town, and all the expenditures were made prior to that time. On the 18th of October, 1851, the action was brought to enjoin the payment of the money. The court say (page 253), "It is a well established rule in equity that if a party is guilty of laches or unreasonable delay in the enforcement of his rights he thereby forfeits his claim to equitable relief. This rule is more especially applicable to cases where a party being cognizable of his rights does not take those steps to assert them which are open to him, but lies by, and suffers other parties to incur expenses and enter into engagements and contracts of a burdensome character." In *East St. Louis*

*v. East St. Louis G. L. Co.* the defense was placed solely on the ground that the city had no power to make the contract. It was held even if there was a defect of power in the corporation to make a contract, yet if the contract was not in violation of its charter, or of any statute prohibiting the contract, and the corporation had induced a party who relied on the contract to expend money in the performance of the same on his part, the corporation would be liable.

In *Hitchcock v. Galveston*, 96 U. S., 341, the city council of Galveston had contracted with Hitchcock and others for the construction of sidewalks, to be paid for by the issue of city bonds. After the work was partly performed the city council stopped the work and prevented its completion. In an action for breach of the contract it was contended that for want of power to issue the bonds the entire contract was void, and no action could be maintained for a breach thereof. But the court held the city liable. *State Board of Agriculture v. The Citizens Street Railway*, 47 Ind., 407. And this was the rule adopted by this court in *Clark v. Dayton*, 6 Neb., 192.

The plaintiff in this case permitted Means to expend his money without objection, in the erection, or rather re-construction, of the bridge, although he knew, or at least had the means of knowing, that the contract had been let and the bridge was then being constructed. Yet he waited before bringing this action until the work was so far completed that in order to preserve what had been done it was necessary to complete the bridge. It is but justice, therefore, that the contractor should be paid for his work.

There is no equity in the bill. The judgment of the court below is reversed and the action dismissed.

REESE, J., concurs.

COBB, CH. J., concurs in the judgment on the ground last stated.