THE PEOPLE EX REL. JOSEPH STICKEL

v.

COMMISSIONERS OF HIGHWAYS.

Mandamus—*Duty of Highway Commissioners to Build Bridges—Discretion.*

1. Commissioners of highways in towns organized under the township organization law can not be compelled by *mandamus* to build a bridge in place of one that has been entirely destroyed.

2. Whether or not a bridge should be built at a given time and place is a matter of opinion. The duty of building is a matter of discretion with the commissioners, and such discretion is not to be controlled by the courts.

[Opinion filed November 23, 1889.]

IN ERROR to the Circuit Court of Montgomery County; the Hon. J. J. PHILLIPS, Judge, presiding.

Messrs. LANE & COOPER and GEORGE PEPPERDINE, for plaintiff in error.

The construction put on the statute in question by the Supreme Court (Commissioners v. Newell, 80 Ill. 587) is that the commissioners are expressly charged with the duty of making and repairing the roads and bridges in their townships, and are expressly required annually to levy and return to the county clerk a tax for that purpose, the very things that we

are insisting that they should do in this case, and if they are expressly required to do this, then they have no discretion in the matter and *mandamus* will lie.   It is averred in the petition that the road in question is a public highway, and as such has been used for more than thirty years; that for thirty years the public had kept a bridge over the creek at the point where said highway crosses the same, and that about six years ago the old bridge washed away, since which time the defendants have refused to build a bridge, though repeatedly requested so to do, although their township is abundantly able to build said bridge and the same is a public necessity.

A provision in a municipal charter that the council shall "cause the streets to be kept in repair" has been held not to confer a discretionary power, but to enforce a duty, the performance of which may be compelled by *mandamus*.   2 Dillon on Municipal Corporations, Sec. 673; Hammar v. City of Covington, 3 Met. (Ky.) 494; Uniontown v. Commonwealth, 34 Pa. St. 293.

These authorities fully sustain this doctrine, and the provisions of our statute being that " the commissioners of highways shall have charge of the roads and bridges of their respective towns and it shall be their duty to keep the same in repair," does not confer discretionary power, but enjoins a duty, the performance of which may be compelled by *mandamus*.   1 Dillon Mun. Corp. Sec. 62.   Coke on Litt. 227, says that " discretion is to discern by the right line of law and not by the crooked cord of private opinion."   See Watson v. Rodwell, 3 Ch. 380; King v. Archbishop, 15 East. 117; Hull v. Supervisors, 19 John. 260.

A *mandamus* will be issued commanding the performance of an act involving discretion but it will not be issued to control the discretion.   In a proper case the suit will command action, but not to control discretion.   People v. Lay, 78 N. Y. 43; McCreary v. Rogers, 35 Ark. 293; People v. Auditors, 82 N. Y. 80; People v. Supervisors, 45 N. Y. 196; Appling v. Baily, 44 Ala. 333; Commonwealth v. Henry, 49 Pa. 530; People v. Commissioners, 7 Wend. 474.

It is held by Moses on Mandamus that a railroad company

can be compelled by *mandamus* to build a bridge when the law charges them with that duty. (Pages 176 and 177.) He says on page 176 : "It has been said that no better general rule can be laid down upon this subject than that where the charter of a corporation or the general statute in force and applicable to the subject imposes a specific duty either in terms or by fair and reasonable construction and implication, and there is no other specific or adequate remedy, the suit of *mandamus* will be available. But if the statute or the general law of the State affords any other specific and adequate remedy it must be refused."

This seems to be the law, and if so, how does the case at bar stand? The law clearly charges the commissioners of highways with the building of bridges and the repairing of the roads. The petition charges that they have ample means for this purpose at their command, and still they refuse to do anything after the public have waited for over five years. Is there any other remedy ? If so, we hope the court will point it out to us, as we have been unable to find it. The general public want this bridge built, and are willing to pay for it in the way provided by law, but the defendants refuse to do anything, and now counsel talks to us of discretion when the plain letter of the law demands that the work shall be done. See Boggs v. The C., B. & Q. R. R. Co., 54 Iowa, 435; Weeden v. Town Council, 98 Am. Dec. 375, note.

In the case at bar the writ may issue to compel the defendants to act, but we do not seek to interfere with their discretion as to the manner of their acting. See also Arberry v. Beames, 55 Am. Dec. 791 and note; and People v. Jameson, 40 Ill. 93 (89 Am. Dec. 337), and note; Mobile and Texas R. R. v. State, 112 U. S. 83.

Mr. JAMES M. TRUITT, for defendant in error.

PLEASANTS, P. J. This was a petition for a writ of *mandamus*, to compel the commissioners to levy a tax and build a bridge on the Taylorville road, over the middle fork of Shoal

creek. It averred that this road had been a public highway, in use as such for thirty years; that a bridge had been built and kept in repair and use thereon over said creek during all that time, until about six years before the filing of the petition, when it was entirely washed out and destroyed; that since that event the road at that point has been impassable, the travel being compelled to cross the creek at a ford about sixty yards west of the bridge site, which, in times of high water, is from four to six feet deep, and is therefore worthless as a highway for at least four weeks in every year; that a suitable bridge would need to be of forty-eight feet span, with an approach of seventeen feet at each end, which would cost $576.81; that the taxable property of the township, as assessed for the year 1886, was over $400,000, and the levy for road and bridge purposes only fifteen cents per $100 thereof; that the bridge is necessary, and the town abundantly able to build it, and that the commissioners have been requested to levy the requisite tax and build it, but refused to do so.

On demurrer thereto the court below held it insufficient and dismissed it.

This petition made as good a case as could be shown by affirmative averments for the allowance of the writ, if it should ever be allowed for the purpose stated. It may, therefore, be considered that the record fairly presents the question whether, in any case, commissioners of highways can lawfully be compelled, by *mandamus*, to build a new bridge in place of one that has been entirely destroyed.

The office of that writ is to enforce the performance of only such duties as are clearly, specifically and imperatively enjoined by law. Such duties are ministerial. Where the doing of the thing demanded is discretionary with the respondent, *mandamus* will not lie to compel it; and where it is an end which may be attained in different ways, by different means not specifically prescribed by law, it will not lie as to the ways and means, but only as to the end. So when the duty enjoined is simply to act or decide upon a particular case arising, it will lie to compel action or decision, but not its character or effect—how they shall act or what they shall do, their

decision being discretionary; and where the duty claimed arises only upon a condition of fact to be found, and no other person, officer or tribunal is designated to find it, the authority to determine the question of its existence rests with the one charged with the duty so conditioned, and until the condition is so found, the duty prescribed. can not be compelled. The character of the act or duty in question, tested by these elementary rules, will determine whether or how far its performance may be enforced by *mandamus*. The People ex rel. v. Dental Examiners, 110 Ill. 185–6.

Montgomery county is under township organization. The powers and duties of the commissioners are defined by positive law, and all the provisions bearing, or claimed to bear upon the question here, so far as we are advised, are to be found in sections 2, 5, 13, 14, 19 and 20 of chapter 121 of the Revised Statutes.

Section 2 gives them the "charge of the roads and bridges of their respective towns" and makes it their duty "to keep the same in repair and improve them so far as practicable"; also, "whenever the available means at their disposal will permit, to construct permanent roads, beginning where most needed."

By section 5 they are "to exercise such care and superintendence over roads and bridges as the public good may require."

Section 13 provides that annually, at a stated meeting, they shall "determine what per cent of tax shall be levied on the property of the town for road and bridge purposes, not exceeding sixty cents on each one hundred dollars;" and that "if, in the opinion of the commissioners, a greater levy is needed in view of some contingency, they may certify the same to the board of town auditors and the assessor, a majority of whom shall be a quorum, and with the consent of a majority of this entire board given in writing, an additional levy may be made of any sum not exceeding forty cents on the one hundred dollars of the taxable property of the town."

Section 19 enables them to obtain county aid "when it is

necessary to construct or repair a bridge," and the conditions as to its cost and the means of the township are as therein expressed; provided, that "when it is determined by them to ask" it, they shall, before any contract for work or material or any other expense shall have been entered into, present their petition as therein prescribed.

And section 20 provides that "when the commissioners desire to expend on any bridge or other distinct and expensive work on the road a greater sum of money than is available to them by other means," they may have a town meeting called to vote on the proposition to issue its bonds to raise it.

From these provisions it is clear that commissioners have authority to build bridges on the lines of the public roads of their respective towns in the first instance and to rebuild them when destroyed, if, in their judgment, the public good demands it and they have in hand or can lawfully obtain the requisite means; and it follows that an intelligent sense of duty would require them in such cases to exercise it. But it does not necessarily follow that they may be compelled, in any case, to do so against their actual or declared judgment, by the extraordinary writ of *mandamus*. What other liabilities they may incur, if any, to be enforced in other proceedings, for a wilful neglect of duty or abuse of discretion, we are not now inquiring nor called upon to decide; but unless the performance demanded is absolutely and imperatively enjoined, leaving no discretion to be abused, this particular proceeding has no place. Then, does the statute expressly or by clear implication make the building of a bridge in any case imperative upon the commissioners?

The duty enjoined by the first clause of section 2, whether imperative or not, is limited in terms to "keeping in repair and improving" both roads and bridges. Applied to a bridge, as a distinct and independent subject, this must necessarily mean an existing bridge, and the repairs and improvements intended must be only such changes or additions as are designed to remedy its defects or increase its utility or convenience.

But it is claimed that a bridge on the line of a road is a

part of the road, so that when it is destroyed the road thereby becomes out of repair, and therefore to keep it in repair, a bridge must be built in place of the one destroyed.

We do not concede this minor premise, nor think the conclusion drawn would certainly follow if we did. While it is true that in one sense a bridge is part of the road, in the common understanding and in contemplation of the law it is quite distinct, being a wholly artificial structure, bearing a different name, wearing a different form, made of different materials, and subject, as a road proper is not, to decay by time and to destruction by accident, by wind or water or fire. It is rather to be regarded as a means of connecting different roads, or parts of the same naturally separated; and though operating in a manner different from that of some others, as a ferry, or, conceivably, a balloon, in that it avoids the necessity of a stop or change in the transit, and therefore more like a continuation of the road, yet we know that in common speech the two terms signify different things, notwithstanding they serve the same purpose and in like manner. The statute also uses both, as though neither included the other, and treats the two subjects separately; and in section 20 expressly recognizes a bridge as a "distinct * * * work on the road." But if a bridge destroyed had been a part of it in every sense, it would not follow in every case that the building of another would be the necessary or the best way to repair it. That would depend on the natural condition of the locality or other circumstances.

Possibly a causeway or fill (in case of a pond or dry chasm), a ferry, a ford, a change in the line of connection, would answer as well; or the vacation or abandonment of the road, in view of another, as fully accommodating the same travel would be the better policy.

We might, however, have omitted this bit of essay or criticism and disposed of the point upon authority, which has expressly decided that the rebuilding of a bridge substantially destroyed is not among "the repairs contemplated by that section." The People ex rel. Brokaw v. Commissioners of Highways, 118 Ill. 243. So much further notice has been

taken of it, because the argument for appellant seems to rely mainly on that provision.

The duty "to construct," imposed by the second clause of the same section, is in terms limited to "roads" and upon condition that they are "needed" to be found by the commissioners, since no other tribunal is indicated which is matter of opinion, and so involving the exercise of judgment and discretion.

Section 5 is of the same character, enjoining in general terms only "such care and superintendence of roads and bridges as the public good may require," they being judges.

Section 13 leaves the per cent of tax to be levied for road and bridge purposes to be determined by them in their discretion, limited only by the *maximum* thereby fixed. Of course they must determine the particular purposes also, if any there may be, to be accomplished by means of this power; and unless in their judgment bridge-building should be in-c'uded among them they are not required to estimate and levy for it.

That the duty to exercise the power given by section 14 to levy in certain cases an additional amount, and that given by section 19 to apply for county aid to build a bridge, are not imperative, but discretionary, and not to be compelled by *mandamus*, was directly decided in the Brokaw case, *supra*, 118 Ill. 244–5. And that this is true of the authority to apply for the issue of town bonds conferred by Sec. 20, the only remaining one of those referred to, is sufficiently manifest from the language employed—"When the commissioners desire," etc.

It is not claimed that the statute in terms makes the duty in question imperative in any case; nor that any other provisions than those referred to contain an implication to that effect. On the contrary, all the powers expressly given to obtain the means required for its performance are discretionary. The obvious and sufficient reason for this, and which would remove any doubt that might otherwise remain, is to be found in the character of the duty itself.

Whether a road is obstructed or a bridge out of repair, is one of pure fact that any court or jury can determine upon

evidence of an actual, visible condition, which may be clearly seen and accurately described. The finding of the fact determines the duty absolutely. A road or bridge in public use, certainly ought to be kept in a condition that is reasonably safe and convenient for such use. A mere obstruction or defect, impairing its safety or convenience, ought to be removed or repaired, if practicable. A doubt about that can not exist in reason, and does not in law. The duty is therefore ministerial, and hence the statute imperatively enjoins it, and the courts will enforce its performance by *mandamus*, though the ways and means of performance, being various and depending on the character of the obstruction or defect, may be left to the choice of those who are charged with the duty.

But whether a bridge shall be built is always primarily and necessarily a question whether it ought to be built; whether, under the circumstances, it would be discreet to build it. That is not a matter of fact, but of opinion. Courts and juries are not organized nor competent to decide for anybody else, any such matter. Opinion is free, and from its nature can not be bound. This duty, then, being discretionary, and the propriety of its performance in every case necessarily matter of opinion and judgment, it would certainly be unreasonable to make its performance, in any, imperative. If it were so made, then the citizen least qualified to form a sound judgment in the matter, could compel its performance against the unanimous judgment of all the others—judges and jurors included—each one of whom has at least an equal claim to all the benefits of wise and proper action in the premises.

Without a clear expression on their part it is not to be presumed that the legislature intended to make it imperative. We find in the statute no such expression, and are of opinion they have not so made it. *Mandamus*, therefore, will not lie to compel its performance. St. Clair County v. The People, 85 Ill. 396.

*Judgment affirmed.*