# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## SECOND DISTRICT—OCTOBER TERM, 1899.

## Commissioners of Union Drainage District v. The Commissioners of Highways.

1. APPEALS—*By Drainage Commissioners Without Bond.*—Under Section 71 of the Practice Act (Hurd's R. S. 1899, 1214), no appeal bond is required of the commissioners of drainage in taking an appeal from an inferior to a higher court.

2. BRIDGES—*Recovery of Costs of Building by the Drainage Commissioners.*—An action will not lie by the commissioners of a union drainage district against the highway commissioners of two towns jointly for the cost of a bridge erected by such drainage commissioners over a ditch dug by them across the highway on a town and county line between said two towns, where said highway commissioners have not made a joint contract to build said bridge.

3. SAME—*Expenses of Building where the Towns are Liable.*—Where the commissioners of a union drainage district dig a ditch across a town line road, and after notice to the highway commissioners of both towns to build a bridge in the highway across said ditch, and failure of said highway commissioners to build such bridge, the said drainage commissioners build the bridge, the highway commissioners of said two towns are liable for the expense of building said bridge in such proportion as is just and equitable, taking into consideration the taxable property in each town, the location of the bridge, and the advantage each will derive therefrom.

4. SAME—*When Not Included in an Allotment.*—An allotment of a town line road does not include bridges upon said road.

5. APPELLATE COURT PRACTICE—*A Plaintiff Entitled to a Reversal of a Judgment in his Favor.*—A plaintiff is entitled to the reversal of an erroneous judgment in his favor.

(93)

94     Appellate Courts of Illinois.

Vol. 87.] Com'rs of Union Drainage Dist. v. Com'rs of Highways.

Appeal from the Circuit Court of DeKalb County; the Hon. Charles A. Bishop, Judge, presiding. Heard in this court at the October term, 1899. Reversed and remanded with directions. Opinion filed February 1, 1900.

D. J. Carnes, G. W. Dunton and John Faissler, attorneys for appellant.

The statute in relation to allotment of roads on town and county lines, in force on June 9, 1870, when the road in question was divided, was the act of 1861, section 86, page 262, and read as follows:

" It shall be the duty of the said commissioners, when there may be such highway, to divide it into two or more road districts in such manner that the labor and expense of opening, working and keeping in repair such highway, through each of the said districts, may be equal, as near as may be, and to allot an equal number of the said districts to each of the said towns."

Section 87 provided:

" Each district shall be considered as wholly belonging to the town to which it shall be allotted for the purpose of opening and improving the road and keeping it in repair."

The present act, Par. 58, Starr & Curtis' Statutes, Chapter 121, reads:

" The commissioners shall also, in case a new road is established, allot to each of such towns the part of such road which each of such towns shall open and keep in repair, and the part so allotted shall be considered as wholly belonging to such town."

Par. 21 of the road and bridge law (Starr & Curtis) provides for bridges over town or county boundary streams, and is as follows:

" Bridges over streams which divide towns or counties, and bridges over streams on roads on county or town lines, shall be built and repaired at the expense of such town or counties: Provided, that for the building and maintaining of bridges over streams near county or town lines, in which both are interested, the expense of building and maintaining any such bridges shall be borne by both counties or towns in such portion (proportion) as shall be just and equitable between said towns or counties, taking into consideration the taxable property in each, the location of the

bridge, and the advantage of each, to be determined by the commissioners in making contracts for the same as provided for in section 22 of this act."

The statute in relation to allotment of portions of the town line road to the respective towns does not include bridges. Commissioners of Highways v. Gibson, 7 Ill. App. 231.

The various statutes involved are there considered in an opinion by McCulloch, P. J., and he says, on page 234:

" These sections relate wholly to the locating, opening, making and repairing of roads only, and have no specific application to bridges;    *    *    *    although for the purpose of making and repairing roads laid out upon town lines, it is the duty of the commissioners to allot certain portions thereof to each town, yet they are under no obligation to do so in regard to bridges in which two towns are interested, but these are left to be provided for in some other manner."

The question was again before the Appellate Court in People v. Commissioners of Highways, 32 Ill. App. 164, and Judge Pleasants, in the opinion, on page 169, said:

" It is claimed that a bridge on the line of a road is a part of the road.    *    *    *    We do not concede this.    *    *    * The statute uses both (road and bridge) as though neither included the other, and treats the two subjects separately, and in section 20 expressly recognizes a bridge as a distinct work on the road."

No action will lie by one town against another to recover one-half the expense of a bridge on a town line, because, under the statute providing for the building of such a bridge, the commissioners must agree in relation to the building of the bridge, and neither town was obliged to agree to build a bridge.    The allotment of the road does not carry with it the burden of building the bridges on the parts so allotted. Commissioners of Highways v. Commissioners of Highways, 100 Ill. 631.

In People v. Commissioners of Highways, 158 Ill. 197, it appears that the road in question had been allotted into districts and apportioned between two towns, and that there had been afterward an agreement between the commissioners of the respective towns under the bridge statute as

96    APPELLATE COURTS OF ILLINOIS.

VOL. 87.]  Com'rs of Union Drainage Dist. v. Com'rs of Highways.

to jointly building a bridge, and that agreement was enforced by mandamus.

"In order to charge a party with a breach of duty in maintaining a bridge in repair, the word bridge should be used; it will not do to use the word highway." Elliott on Roads and Streets, 24.

Substantially the same is said in Angell on Highways, Sec. 40.

HOPKINS, THATCHER & DOLPH and JONES & ROGERS, attorneys for appellees.

If the drainage district in question (comprising less than three-eighths of the territory of the two towns) can build the bridge and compel the whole towns to pay, it would indirectly levy a tax beyond its jurisdiction against the consent of the inhabitants.

Taxation must be uniform within the jurisdiction of the body imposing the same. Constitution of Illinois, Sec. 9, Art. 9.

Burden of taxation can not be imposed without the consent of the taxpayers to be affected. Updike v. Wright, 81 Ill. 49; People v. Knopf, 171 Ill. 191; Hundley & Rees v. Commissioners, 67 Ill. 559; People v. Mayor, 51 Ill. 17.

Highway commissioners could not be compelled, against their judgment and discretion, to build a bridge. People v. Highway Commissioners, 158 Ill. 197.

The statute of allotment of town line roads provides that the portion allotted to each town shall be considered as wholly belonging to such town. Gross' Statutes 1868, Ch. 103, Art. 17, Secs. 86, 87, 88.

Sec. 21 of Chap. 121, Hurd's Revised Statutes, provides for the joint building of bridges over "streams." Streams are not artificial waterways. Am. & Eng. Ency. of Law, Vol. 23, page 939.

Drains mean artificial waterways. 6 Am. & Eng. Ency. of Law, page 2.

MR. JUSTICE DIBELL delivered the opinion of the court.

Union Drainage District No. 3, of the town of Virgil, Kane county, and of the town of Cortland, DeKalb county,

embraces less than one-half the territory of the town of Virgil, and less than one-fourth of the territory of the town of Cortland. The commissioners of said drainage district dug a ditch across the highway on the town and county line between said towns, and determined that a bridge across said ditch on said highway was necessary, and served notice upon the commissioners of highways of said respective towns to build such bridge. The highway commissioners did not comply. More than thirty days after said notice the drainage commissioners built said bridge at a cost of $426.05, and then brought this suit against the highway commissioners of both towns jointly to recover the cost of said bridge. Summons was duly served. The highway commissioners of the town of Virgil were defaulted. The highway commissioners of the town of Cortland filed three pleas. The first was the general issue, and the second *nul tiel corporation;* and upon these issues of fact were joined. The third plea set up, among other things, that said town line road had been apportioned in 1870 under the statute; that the portion of the road where said ditch was dug was allotted to the town of Virgil, and said allotment had ever since continued in force, and under and by virtue of the allotment the town of Virgil had since then constructed the bridges and kept them in repair upon the part so allotted to it. A demurrer to said third plea was overruled and plaintiff elected to abide by the demurrer. The cause was tried without a jury upon a stipulation as to the facts. The right of plaintiff to maintain this suit was questioned by the highway commissioners of the town of Cortland by a motion to dismiss the suit, and by propositions of law presented. The trial court held the suit could be maintained, but that by virtue of the allotment the town of Virgil alone was liable to build and pay for the bridge. Judgment was therefore rendered against the highway commissioners of the town of Virgil for $426.05 and costs, and against the plaintiff for the costs made by the highway commissioners of the town of Cortland.

Plaintiff appealed. The prayer was for a general appeal.

98 ·     APPELLATE COURTS OF ILLINOIS.

VOL. 87.] Com'rs of Union Drainage Dist. v. Com'rs of Highways.

and so was the order. Plaintiff, however, was required to and did give an appeal bond, in which the appeal was recited to be from the judgment for their costs in favor of the high-way commissioners of the town of Cortland. Our attention is not drawn to any special provision of the statute requiring drainage commissioners to give a bond upon an appeal prayed by them, and under section 71 of the practice act no appeal bond is required of such a body of public officers. We therefore consider the bond surplusage. The appeal is general, and brings the whole case and all the parties before us. The highway commissioners of the town of Cortland have assigned cross-errors, and the highway commissioners of the town of Virgil have not.

First, the place where the ditch of the Union Drainage District crosses the town line road in question is within that part of said road which, in June, 1870, was allotted to the town of Virgil. The statute then in force relative to town line roads and the duties of the highway commissioners of the respective towns, was as follows (Gross' Statutes, Edition of 1868, Township Organization, Article 17, p. 773):

"Section 86. It shall be the duty of the said commissioners (meaning the highway commissioners of the two towns referred to in the previous section), when there may be such highway (a town line road), to divide it into two or more road districts in such manner that the labor and expense of opening, working and keeping in repair such highway through each of the said districts may be equal, as near as may be, and to allot an equal number of the districts to each of the said towns. Section 87. Each district shall be con-sidered as wholly belonging to the town in which it shall be allotted, for the purpose of opening and improving the road and keeping it in repair; and the commissioners shall cause such highway, and the petition and allotment thereof, to be recorded in the office of the town clerk, in each of their respective towns. Section 88. All highways heretofore laid out upon the line between any two towns, shall be divided, allotted, recorded and kept in repair in the manner above directed."

These sections contained no reference to the subject of bridges. While they provided for apportioning each town line road so that each part of it should be, as to the working

and repair of the road, in legal effect, exclusively within one town, yet sections 18 to 21, inclusive, of said article 17, made provision for erecting and maintaining bridges on the town line road at the equal expense of both towns, where the liability to build bridges existed. This demonstrates that the allotment under said sections 86, 87 and 88, of article 17, above quoted, did not cover the subject of bridges on town line roads, but such bridges were governed by sections 18 to 21 of the same article. (Commissioners of Highway v. Gibson, 7 Ill. App. 231; People v. Commissioners of Highways, 32 Ill. App. 164.) In Commissioners of Highways of Dimmick v. Commissioners of Highways of Waltham, 100 Ill. 631, the pleadings showed that the desired bridge was in that part of the town line road allotted to the town of Dimmick, whose highway commissioners were the plaintiff, yet it was not there suggested that because of that allotment Dimmick was bound to build the bridge, but the case was determined on other grounds.

It is argued that as Paragraph 16 of Section 1 of Chapter 131 of the Revised Statutes, adopted in 1874, relating to the construction of statutes, provides that the words highway, road or street, " may include any road laid out by authority of the United States, or of this State, or of any town or county of this State, and all bridges upon the same," it necessarily follows that an allotment of a town line road places wholly within each town the bridges upon the part of said road allotted to it. The first part of said section 1 enacts that said rules of construction shall not govern where " such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the same statute," and the first paragraph thereunder establishes as the cardinal principle for construing general terms " that the true intent and meaning of the legislature may be fully carried out." As article 17 of the road and bridge act in force when this allotment was made not only required the allotment of all town line roads, but also provided for building bridges on town line roads at the equal expense of both towns, where a liability to build existed, it would be inconsistent with the manifest intent of the legislature and repug-

# 100    APPELLATE COURTS OF ILLINOIS.

VOL. 87.] Com'rs of Union Drainage Dist. v. Com'rs of Highways.

nant to such other provisions to hold that an allotment of a town line road included the bridges. The road and bridge act of 1883 in force when this suit was brought, being chapter 121 of the Revised Statutes, contained similar provisions. Section 58 requires the allotment of town line roads, while sections 21 to 24 provide for building bridges on town line roads, and for dividing the expense of building and maintaining such bridges between the two towns in such proportion as shall be just and equitable, taking into consideration the taxable property in each town, the location of the bridge, and the advantage each town will derive therefrom. Sections 23 and 24 show the highway commissioners of each town determine for their town whether they will enter into an agreement to aid in building the bridge. If the commissioners of each town agree to build the bridge, the expense must be borne equitably, as above stated. If the commissioners of one town refuse to aid in building the bridge, the other town may build at its own sole expense, if its electors so decide at a special town meeting. All the provisions of the act of 1883 considered, it is clear it would be inconsistent with the manifest intent of the legislature, and repugnant to the context of the same statute, to hold that the allotment of a town line road carries with it the bridges thereon, and imposes the cost of their erection and maintenance upon the town to which that part of the road where they are located is allotted. Again, the word used in said paragraph 16 of section 1 of the act for the construction of statutes is " may " and not "shall." Many instances can be found in the statutes where the words "road" and "highway" are used in a sense which plainly could not include bridges.

Further, if the allotment bound each town to build bridges over streams then crossing the road within its allotted part, yet such an allotment could not be so extended as to bind such a town to build a bridge over an artificial ditch dug across its allotted part of the road many years later by another corporate body, under laws and policies brought into being long after. The object expressed in section 86, above quoted from the statute in force when this

allotment was made, was to make the expense as nearly as. practicable equal between the two towns. Requiring one town to construct at its sole expense a bridge over an artificial ditch dug years after the allotment would destroy the equality of expense provided for by the allotment. Again, it has been the law of this State for many years that no town is legally liable to build or repair a bridge on a town line road, except some statute expressly compels it, or it has assumed the liability to do so by some contract, express or implied. (Comrs. of Highways v. Comrs. of Highways, 100 Ill. 631; People v. Comrs. of Highways, 158 Ill. 197.) This established rule ignores all questions of the allotment of the road. We are therefore of opinion that the allotment in 1870 neither established the liability of the town of Virgil to build the bridge in question, nor tended to relieve the town of Cortland from liability therefor. Hence the demurrer to the plea should have been sustained.

Second. A town may by contract bind itself to build and to keep in repair a bridge upon a town line road, whether upon its allotted portion of the road or not. It is stipulated that upon the part of the road allotted to each town in 1870 there were then two bridges, and that each town has ever since maintained and kept in repair the two bridges upon the part of the road allotted to it. These facts tend to show an agreement by each town to keep in repair said two bridges located within its allotted part of the road. That agreement, however, whether express or implied, can not be extended so as to bind either town to erect a bridge in 1895 across an artificial ditch newly dug across said road by another municipality. Neither town is liable to build a bridge across said ditch by virtue of any express or implied agreement appearing in this record.

Third. From the authorities hereinabove cited, and from the cases cited in said authorities, and from the provisions of our present road and bridge act and of prior statutes upon the subject, we think it clear that prior to the passage of the farm drainage act it had long been the settled policy and law of this State that the determination of the necessity and advisability of building bridges upon highways

102    APPELLATE COURTS OF ILLINOIS.

VOL. 87.] Com'rs of Union Drainage Dist. v. Com'rs of Highways.

should be left to the discretion of the highway commissioners of the town. After they had once determined to build a bridge and had built it, or had accepted a bridge built by private enterprise, they could be compelled to keep it in repair. If the location was on a town line road, and they had agreed with the commissioners of the other town to build or aid in building a bridge, they could be compelled to perform their contract, and thereafter to keep or aid in keeping the bridge in repair. But until the highway commissioners had in some way bound themselves, it was purely a question within the exercise of their uncontrolled judgment and discretion whether they would put the town to the expense of a bridge over any particular stream, except so far as the building of a bridge might be forbidden for lack of revenue. The provisions of prior statutes, which had been construed as investing highway commissioners with this discretion, were carried, as above shown, into the road and bridge act of 1883 (which was in force when this suit was begun in 1896), and with but slight change in language and meaning. It is claimed by the drainage commissioners here that this discretion, so far as relates to bridges over drainage ditches which cross highways, was impliedly destroyed by the farm drainage act of 1885. Section $40\frac{1}{2}$ relates to drainage districts wholly within one town, and is as follows :

" The commissioners shall have the power and are required to make all necessary bridges and culverts along or across any public highway or railroad which may be deemed necessary for the use or protection of the work, and the cost of the same shall be paid out of the road and bridge tax, or by the railroad company, as the case may be; Provided, however, notice shall first be given to the road or railroad authorities to build or construct such bridge or culvert, and they shall have thirty days in which to build or construct the same; such bridges or culverts shall in all cases be constructed so as not to interfere with the free flow of water through the drains of the district. Should any railroad company refuse or neglect to build or construct any bridge or culvert as herein required, the commissioners constructing the same may recover the cost and expenses therefor in a suit against said company before any justice of the peace

or any court having jurisdiction, and reasonable attorney's fees may be recovered as part of the cost. The proper authorities of any public road or railroad shall have the right of appeal the same as provided for individual land owners."

This section is peculiar in many respects. It does not directly enact who shall determine when a bridge across a public highway is necessary for the protection of the work done by the drainage commissioners. We assume that that determination is intended to be confined to the drainage commissioners. It enacts that the cost of such a bridge shall be paid out of the road and bridge tax, and requires notice to the road authorities to build a bridge that will not interfere with the free flow of water through the drains of the district, and thirty days time is given the road authorities to build such a bridge. Where such a bridge is needed across a railroad, and its authorities do not build it within thirty days after notice, and the drainage district builds the bridge, the section provides for a suit against the railroad company, but it makes no provision for suit against the highway commissioners if they fail to act. Yet it gives them the right of appeal. Inasmuch as the highway commissioners are required to build the bridge upon notice from the drainage commissioners, and it is required the bridge shall be built out of the road and bridge tax, and by a later act the highway commissioners are no longer also the drainage commissioners, as the farm drainage act first provided, it seems to follow that the highway commissioners, as to such bridges, are now deprived of the discretion formerly vested in them. This statute seems to impose a hardship upon those owning property within the town outside the drainage district. Section 40 permits the drainage district to assess against a public road the benefits it will receive from the construction of the drainage ditch, and requires such assessment to be paid out of the road and bridge tax. This provision has been sustained in Com'rs of Highways v. Drainage Com'rs, 127 Ill. 581. Having thus obtained pay for all the benefits the drainage district confers upon the highway, the drainage commissioners, by section $40\frac{1}{2}$, may

104    APPELLATE COURTS OF ILLINOIS.

VOL. 87.] Com'rs of Union Drainage Dist. v. Com'rs of Highways.

further build a bridge across its artificial dutch in the high-way at the expense of the road and bridge tax. The result is that the entire body of taxpayers of the town not only must pay for the benefits the highways receive from the drainage ditch, but must, in addition thereto, pay the cost of a bridge required solely for the benefit of the drainage district. This seems to cast an unequal burden upon the taxpayers who reside outside the district in a town where the drainage ditch covers and benefits but a small portion thereof. It will, however, be assumed, for the purpose of this decision, that the legislature had power to enact this statute.

Fourth. Section 48 gives commissioners of union drain-age districts the same powers as drainage commissioners have in districts wholly within one town. This would give them power to build a bridge over a drainage ditch inter-secting a town line road, to be paid for out of the road and bridge tax. But is the road and bridge tax of each town liable for the entire cost, and if so, are the two funds liable jointly? This is an action of debt against the highway commissioners of the two towns. It is a familiar rule that where two or more are sued in an action *ex contractu* there must be a judgment against all or none, unless some defend-ant has shown a defense arising after the creation of the original liability. In other words, the plaintiff in every action *ex contractu* must prove the original joint liability of every person made defendant, or he must fail as to all the defendants. To maintain this action plaintiff was bound to prove that the highway commissioners of the two towns were jointly liable for the entire cost of the bridge. From what does this liability arise? Plaintiff in its argument says it does not rely at all upon the road and bridge act. The farm drainage act nowhere creates such a joint liability against the two towns for the entire cost of the bridge. It nowhere determines whether the road and bridge tax of each town shall be liable for the entire cost of the bridge, or whether each shall be liable for half the cost, or whether the cost shall be apportioned in some other manner. We are of opinion this is governed by section 21 of the road

and bridge act of 1883, in force when this bridge was built. The old statute on this subject, to which we referred in an earlier part of this opinion, required the expense of a town line bridge to be divided equally between the two towns where a liability to build existed. Section 21 of the present act provides that the expense of such bridge shall be borne by the two towns in such proportion as shall be just and equitable between the two towns, taking into consideration the taxable property in each, the location of the bridge and the advantage of each. We are of opinion the drainage commissioners can not enforce that just and equitable division in an action of debt, where there must be a recovery against both defendants for one sum *in solido*. The drainage commissioners are not aided by section 22 of the road and bridge act. It makes it lawful for the highway commissioners of the two towns to make a joint contract for building a town line bridge, and provides that upon such a contract they may be sued jointly; but sections 23 and 24 show they can not be compelled to agree to aid in building a town line bridge. Here they did not make a joint contract, and section 22 does not apply. The drainage commissioners must seek their remedy in some proceeding wherein the equitable division of said cost between the two towns can be made.

The judgment against plaintiff for the costs made by the highway commissioners of the town of Cortland was therefore proper. It was error to overrule plaintiff's demurrer to the plea setting up the allotment, and error to refuse plaintiff's proposition of law upon that subject, and these rulings are assigned for error by appellant. In our opinion plaintiff is not entitled to recover the cost of the bridge in this joint action against the commissioners of highways of both towns, and should not have recovered a judgment against the highway commissioners of the town of Virgil. But they were defaulted, preserved no exceptions, did not appeal and have not assigned cross-errors, and we are without authority to reverse the judgment merely for their benefit. A plaintiff, however, may appeal or pursue a writ of error to obtain a reversal of a judgment in his favor for

irregularities which have intervened in the trial court, in order that he may obtain a regular and valid judgment or commence another suit. If the judgment in his favor is based upon reversible error, he is not bound to wait till defendants choose to attack it, but may himself secure its reversal in order that he may proceed in a proper manner for the enforcement of his rights. (Teal v. Russell, 2 Scam. 319; Jones v. Wight, 4 Scam. 338; Davidson v. Bond, 12 Ill. 84; Thayer v. Finley, 36 Ill. 262.) As already indicated, if the towns of Virgil and Cortland are liable for the cost of this bridge, under section 40½ of the farm drainage act, they are not liable jointly for the whole cost, but each is liable only for its just and equitable proportion thereof, under section 21 of the road and bridge act. It is manifest that in any attempt plaintiff may hereafter make to enforce the liability of the highway commissioners of the town of Cortland to contribute thereto, the judgment rendered below must prove an embarrassment, if not a bar. As error against plaintiff intervened, and the judgment below was erroneous, we are of opinion it has a right to a reversal of that judgment upon its own appeal, in order that it may pursue some proper remedy, and as we hold the suit can not be maintained, it should be dismissed. The judgment is therefore reversed, and the cause remanded to the court below, with directions to dismiss the suit at plaintiff's costs. The costs of this court will be adjudged against appellant.

Reversed and remanded with directions.